THELMA HILL, APPELLEE, V. INTERSTATE TRANSIT LINES, APPELLANT.

288 N. W. 508

FILED NOVEMBER 17, 1939.   No. 30552.

*Thomas F. Hamer, George C. Holdrege* and *William J. Schall,* for appellant.

*Clare B. Davey* and *Gray & Brumbaugh, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER and JOHNSEN, JJ.

SIMMONS, C. J.

This case is an action for damages for personal injuries arising as a result of a collision between an automobile in which the plaintiff was riding and a passenger bus owned and operated by the defendant company. There was a verdict for the plaintiff in a substantial amount. The defendant appeals. The seriousness of the plaintiff's injuries is not questioned; neither is the amount of the verdict attacked as excessive.

Defendant in this appeal claims that the verdict is not supported by the evidence and is contrary to it; that the court erred in the refusal to admit certain testimony; and that the jury were erroneously instructed.

The accident occurred about 11 a. m., December 25, 1935,

near Keystone Junction, Iowa. At that time, the weather was very cold, and the wind was blowing from the northwest. It had been snowing. Whether the snow was falling or being picked up and carried by the wind is not certain.

At the point of the accident, the highway was paved, and ran due east and west through level country. The pavement was 18-feet wide. There was an expansion joint down the center line of the pavement, and on either side of that joint were two painted black lines about 12 inches apart. Snow was on the pavement in many places. The plaintiff was riding in a light coupé, either owned or controlled by her, driven by her brother-in-law. The defendant's bus was a standard passenger bus with a maximum width of eight feet, weighing 10 tons when loaded.

Plaintiff and her brother-in-law were driving west. Defendant's bus was traveling east, was behind schedule, and at the immediate time of the accident was traveling at a speed of 30 to 35 miles an hour.

A snowplow was proceeding west along the north side of the highway at a speed of 10 to 15 miles an hour. The snow was drifting across the highway at points, and when the plow came in contact with the snow, flurries were thrown into the air and were carried southeast by the wind.

The plaintiff's car had been following the snowplow for some distance. Shortly after the bus passed the snowplow, the collision occurred. The distance traveled by the bus after passing the snowplow and before the collision is in dispute.

The primary question of fact to be determined was the location of the car and the bus at the time of the collision with relation to the center line of the pavement. There is a dispute as to all facts bearing on that question. The plaintiff's car was pushed some 40 feet backward to the northeast, and came to rest headed northwest with its front wheels in the ditch, its rear wheels off the pavement on the shoulder. It was practically demolished. The pictures of the car, which are in evidence, were taken after the car

had been removed to a garage. The bus was damaged on the left bumper, light, and fender. If pictures were taken of the bus, they were not offered in evidence. The fender brace was bent so that the front wheels could not be turned to the left and were forced slightly to the right. This would account for the bus' angling to the right and coming to a rest off the pavement on that side.

The driver of plaintiff's car was killed almost instantly, and accordingly his testimony could not be had. Plaintiff's testimony is that they were some distance behind the snowplow on the right side of the center line of the pavement when the bus passed the snowplow, came out of the snow flurries, headed northeast with its front left wheel a foot or more across and north of the center line of the pavement, and ran into the plaintiff's car immediately there-after, without fault on the part of the plaintiff or the driver of her car.

Defendant's testimony was that the bus was south of the center line of the pavement at all times, and that, just as it was passing the snowplow, the plaintiff's car came out from behind the snowplow, turned across the center line into the right lane of traffic in front of the bus, and that the collision occurred on the south half of the pavement. Several witnesses testified to certain marks on the pavement which support defendant's theory of the case. However, the existence of the marks, their point of beginning and what caused them is in dispute. Defendant's theory is that the marks were caused by the rim or tire of the left front wheel of plaintiff's car as it was hurled backward. An examination of the rim and tire was not made before the car was removed. There is a conflict as to the position of the tire and the rim on the car following the collision. There is no clear testimony as to the condition of the tire. There is testimony that the bus turned slightly to the right when it passed the snowplow. The bus was almost as wide as the half of the pavement. Any slight turn back to the left after passing could readily have put the bus across the center line in the position testified to by the plaintiff.

There is sufficient evidence in the record to sustain plaintiff's contention and the jury's finding that the accident occurred when the car in which she was riding was on the north half of the pavement. The case is controlled by the law of Iowa. The parties agree that the plaintiff should recover if the accident occurred as a result of the bus being north of the center line of the pavement.

To this situation we apply the well-recognized rule that, if there is testimony before a jury by which a finding in favor of the party on whom rests the burden of proof can be upheld, the verdict will not be disturbed.

Defendant urges the application of the following rule as controlling in this case:

"The rule that a verdict will not be disturbed when there is evidence tending to support it does not apply where the verdict is opposed to the undisputed physical facts of the case; or is in flat contradiction of recognized physical laws, and where the testimony presented, taken as a whole, is capable of no reasonable inference of such a state of facts as would allow the plaintiff to recover." *Dodds v. Omaha & C. B. Street R. Co.*, 104 Neb. 692, 178 N. W. 258.

However, that rule is not applicable where, as here, there is a reasonable dispute as to the pertinent physical facts. *Suhr v. Lindell*, 133 Neb. 856, 277 N. W. 381.

Defendant complains that the court erred in sustaining objections to the admission of the deposition of the plaintiff offered by the defendant. It is claimed that the deposition, taken some time before the trial, contains statements of the plaintiff contrary to those made at the trial. The plaintiff in her cross-examination was questioned as to certain of those statements. At the opening of its case in chief, the defendant offered "in evidence the deposition of Thelma Hill." After objection thereto and considerable argument, the court admitted in evidence certain questions and answers from the deposition which were read to the jury. The defendant then renewed "its offer of the deposition of the plaintiff, Thelma Hill, as a whole." The deposition was not received in evidence. In its motion for a new

trial, the defendant stated that "the court erred in refusing to receive the deposition of the plaintiff, Thelma Hill, in evidence." The defendant assigns as error in this court that the trial court "erred in refusing to admit the deposition of the plaintiff, Thelma Hill, in evidence." It will be noted that both the offer and the assignment of error go, not to the refusal to admit specific questions and answers, but to the deposition as a whole.

The proper procedure in cases of this kind is to offer the deposition by question and answer, and thereby give the opposing party opportunity to object to the admission thereof, and also give opportunity to the trial court to rule thereon, subject to the statutory limitations applicable to depositions. Any other rule would permit a litigant to abuse the power of compulsory testimony by deposition and might result in the admission of testimony that would be properly excluded were the witness present on the stand. The deposition was properly refused admission for another reason:

"An assignment of error that the district court erred in refusing to admit the evidence of a certain witness will be overruled, if the record shows that a portion of the evidence was, in fact, admitted." *World Mutual Benefit Ass'n v. Worthing*, 59 Neb. 587, 81 N. W. 620.

Here certain questions and answers of the plaintiff contained in the deposition were admitted in evidence. The refusal of the trial court to admit the deposition in evidence "as a whole" was not error.

Instructions numbered 6, 7, and 7A given by the court are as follows:

(6) "The theory of the plaintiff's case is that she was riding in her car westerly following the snowplow, and she and her driver using ordinary and reasonable care, and driving on their own side of the highway, as they progressed westward, when the defendant's bus controlled by its driver, Finck, was so wrongfully controlled that it went in a northeasterly direction from its due and proper path on the highway because of the negligent control of the defend-

ant's servant, Finck, and collided with the plaintiff's car in which she was riding, and so, by reason of such negligent and wrongful control, brought about and proximately caused the collision in question and plaintiff's resulting injuries. If you find this theory of the plaintiff to be the true one and duly established by a preponderance of the evidence in plaintiff's favor, you will return your verdict for the plaintiff."

(7) "The theory of the defendant is that its bus was at all times under proper control and was being controlled without negligence in any degree, by its servant, Finck, and that it was on its right side of the highway, and progressing easterly, *and* that the collision between the plaintiff's car and the defendant's bus was brought about proximately by the plaintiff's car leaving its pathway at the north side of the roadway, and negligently being allowed to proceed westward on the roadway south of the center line of the road and in the path of the defendant's bus, while defendant's bus was proceeding eastward properly in its pathway on the south side of the roadway. If this theory of the defendant appears to be the true one in the case, then you will return your verdict generally for the defendant."

(7A) "If you find that the car in which the plaintiff was riding was on the south side of the traveled portion of the highway at the point of the accident, you are instructed that there is no evidence before you which, in any way, justifies or excuses the said car being on the south side of the traveled portion of said highway, and, then, in that event, the plaintiff was guilty of contributory negligence, and cannot recover as a matter of law, and you must return your verdict in favor of the defendant."

The defendant complains that there was prejudicial error in the giving of instruction numbered 7, in that it required that the jury find that defendant's "bus was at all times under proper control and was being controlled without negligence in any degree," and that the defendant was entitled to a verdict, even though it were negligent, if the collision occurred upon the south half of the highway, be-

cause the record does not show any legal excuse for the plaintiff's car being on the south side of the highway, if such were the fact.

An examination of these three instructions does not disclose prejudicial error. The court by instructions 6 and 7 set out the theories of the parties as to the evidence. Defendant suggests that the conjunctive "or" should have been used instead of the conjunctive "and" which we have italicized. Clearly, such a statement would not have expressed defendant's theory of the case as disclosed by· its answer and its evidence. Instruction 7A is approved by the defendant. The three instructions, when read together, clearly limit the question of defendant's liability to the issue as to the location of the cars at the point of the collision. The other assignments have been considered and prejudicial error not found.

The judgment of the trial court is

AFFIRMED.

JOHNSEN, J., not participating.

CARTER, J., dissenting.

I am unable to agree with the majority opinion in this case. The sole question to be determined, in a final analysis of the case, is the location of the motor vehicles involved at the time of the accident.

The positive evidence of six witnesses who examined the pavement is that all marks from the bus and the automobile involved in the accident lead back to a point south of the center line of the highway, the side of the highway being traveled by defendant's bus. For instance, Dewey Waychoff, a farmer living near the scene of the accident, and called by the plaintiff as a witness, testified: "Q. These scratches that you observed, were they in the snow or what? A. They were in the pavement and snow. * * * Q. Did you notice just where the west end of this scratch began? A. Yes; I saw south of the black line they started. * * * Q. How far was the first scratch you noticed from the center lines? A. You mean how far south or over the black line? Q. Yes; if you know. A. Oh, I would say five

or six inches over." John R. Burrows, the county coroner, testified as follows: "Q. What examination did you make? * * * A. I examined the pavement. Q. What marks did you see there on the pavement, Mr. Burrows? * * * A. There were different marks on the highway, or scratches on the highway. Q. In which direction were they from the automobile? A. They were in a southwesterly direction from the automobile. Q. Did you notice where they led? A. Yes. Q. Where did they lead? A. To a portion of the pavement directly south of the black line painted on the pavement. * * * Q. How far (south) of the south black line were these marks that led over to the car? A. Approximately one foot." Kenneth Rhoades, state highway patrolman, testified: "The marks led from the north side of the pavement where the débris was off the shoulder, in a circle, a trifle of a circle, southwesterly direction over and just beyond the tar, the center tar stripe on the highway." Three employees of the defendant testified to the same facts as the foregoing witnesses. The only testimony produced to meet this evidence is that of two witnesses who stated that they observed no marks on the south half of the pavement. They did not testify that they looked for marks, nor to any other fact that would indicate that the evidence was other than the result of a failure to observe. This being true, the physical facts are not disputed and should control the result of the litigation. With the physical facts established, it is clear that plaintiff's driver turned across the center line to pass the snowplow into the path of the bus coming from the opposite direction.

The bus driver testified that he was driving on the right side of the highway, and as he was passing the snowplow, the car in which plaintiff was riding loomed up in the storm directly in his path. Harold J. Davis, a merchant of Tama, Iowa, and a passenger on the bus, testified that the bus was on the right side of the highway and that plaintiff's car darted over in front of it. Mrs. Emma Cox of Marshalltown, Iowa, also a passenger on the bus, testified that, before the bus had cleared the snowplow, "the car

tried to pass the snowplow, and it swerved around the snowplow, coming directly on the south side towards the car, or the bus." W. P. Cox of Huron, South Dakota, also a passenger on the bus, testified as follows: "Q. Now, as I understand you, you saw a black object about the time the bus and snowplow met? A. Yes, sir. Q. Where was it? A. Well, it appeared from behind the snowplow and swung out. Q. Had you seen it before the bus and snowplow met? A. No, sir; I had not. Q. Could you see as they met which way it was headed? A. It was headed across the road, towards the bus; yes, sir." The evidence of these disinterested witnesses is not only very convincing, but it is in line with the undisputed physical facts established in the record.

The only evidence in the record that supports the finding of the jury is that of plaintiff herself. She says that the bus was on the wrong side of the road when the accident occurred. Her testimony is impeached by at least three other witnesses. The record shows that Arthur L. Bye, court reporter of the Eighteenth judicial district of Iowa, took a statement from plaintiff the day following the accident, and testified that a part of it was as follows: "Q. Just prior to the collision, you were asleep, you say? A. I think I probably must have been. I don't remember anything, only I know it was snowing and blowing terribly, but I do remember seeing this snowplow ahead of us there, at that time or one other time, I don't remember now which it was. Q. But you do remember seeing it just ahead of you? A. No. Q. Prior to the collision? A. I don't remember seeing anything or anything about the collision." The coroner, Mr. Burrows, also testified that plaintiff told him that she was probably asleep. The highway patrolman Rhoades testified that the day after the accident he went to the hospital to interview plaintiff. His version is reported in the record as follows: "Q. Did you see Thelma Hill? A. I did. * * * Q. What was she doing? A. Smoking a cigarette, when I first went in. Q. Did you observe her as you talked to her, as to whether she seemed to be bright?

A. She talked bright, yes, sir, when I observed her." "Q. Did you ask her to tell you what she knew about the accident? A. Yes, sir; I did. Q. And what did she say to you in reply? A. She said that at the time of the accident she was either dozing or sleeping, and that she knew nothing about it."

I submit, therefore, that the undisputed physical facts require us to hold for the defendant. But, in addition thereto, we have the evidence of all the disinterested eyewitnesses who reconstruct the accident in conformity with the undisputed physical facts. And, in addition to all this, plaintiff's testimony as to how the accident occurred, upon which the verdict must rest if it is to be sustained, is impeached to such an extent that it is not worthy of belief. In my opinion, the evidence preponderates in favor of the defendant as a matter of law, and the judgment should be reversed.