RATH, Respondent, v. DOERFLER, Appellant.

*May 12—June 6, 1967.*

For the appellant there was a brief by *McKenzie, Robertson, Downey & Kellogg* of Appleton, and oral argument by *Thomas B. McKenzie.*

For the respondent the cause was submitted on the brief of *Sarto Balliet,* attorney, and *Bradford & Gabert* of counsel, all of Appleton.

HANSEN, J. There are three issues in this case:

1. Is there sufficient credible evidence to support a jury verdict that Rath was the procuring cause of the sale to Wieseler?

2. Were the trial court's instructions to the jury incorrect or insufficient, and if so, would they affect the substantial rights of the defendant?

3. Did the trial court err in denying the defendant's offer of the entire adverse examination of the plaintiff?

*Sufficiency of the Evidence.*

The defendant contends that the jury verdict finding that the plaintiff was the procuring cause of the sale to Wieseler is not supported by the evidence.

However, under the rule we constantly cite, if there is any credible evidence, either facts or inferences which may be reasonably drawn from such evidence, which under any reasonable view supports the verdict of the jury, it must be upheld. *Vasselos v. Greek Orthodox Community* (1964), 24 Wis. (2d) 376, 377, 129 N. W. (2d) 243. On review, this court must accept the credible evidence most favorable to sustain the verdict. *Burlison v. Janssen* (1966), 30 Wis. (2d) 495, 141 N. W. (2d) 274.

Rath testified that when he went to work for Doerfler, the agreement was that he would get a commission on all lots that he sold in Northwood Park. The commission eventually agreed upon in writing was 3 percent and made no exceptions or limitations of any parcels in the development. Defendant contends that the agreement was not intended to cover so-called bulk sales. Defendant opened an office in Northwood Park and the plaintiff was to spend not less than one half of each day in the office.

Rath's first contact with Wieseler was in November of 1963, when they inadvertently met while having coffee. He told Wieseler they were interested in selling lots in Northwood Park in package deals, and if interested he would put something together for him. Within a day of this meeting, Wieseler called the plaintiff and asked him to arrange a meeting with the defendant. Such a meeting was arranged for November 29, 1963, and the three of them were present; however, the defendant for only a limited time, and the plaintiff spent the balance of the morning with Wieseler. Shortly thereafter, plaintiff sent Wieseler a letter containing several alternate offerings of lots located in Northwood Park in blocks of

7, 24, 34 and 40 lots. December 9, 1963, the parties had another meeting at which there was a general discussion as to the selection of lots by Wieseler. January 30, 1964, the plaintiff received a telephone call from Wieseler telling the plaintiff that he was very confident an agreement could be reached.

January 31, 1964, an agreement for the sale of the lots was executed. There was an addendum to this agreement signed July 15, 1964. The plaintiff was not present on either of these occasions. The defendant informed the plaintiff that the Wieseler deal was finalized. For some time after this date, the defendant kept assuring the plaintiff "pretty soon you will have some money in your pocket." Rath testified the defendant was referring to the commission he was to receive on the Wieseler deal. The plaintiff insisted on getting together with the defendant to discuss and settle this matter, and about August 4, 1964, they did, at which time the defendant told the plaintiff, "I can't collect any commission and I can't pay you."

Further, the plaintiff testified that when it was certain they were going to enter into an agreement with Wieseler, the defendant guaranteed a $750 note as an advance on commissions. The defendant denies this. The note became due, was not paid by the plaintiff and eventually paid by the defendant. The loan officer at the bank where the loan was negotiated testified that at the time there was a discussion about real-estate deals and commissions and that he had a small memo that indicated the note was to be paid out of commissions. He does not recall referral to specific commissions.

The defendant's position is that he initiated the transaction with Wieseler in 1962 when Wieseler entered into a contract with the defendant to purchase top soil from the property that later became Northwood Park Plat. At this time, the conversation contemplated the plat being annexed to the city of Appleton and Wieseler and

his associates securing a contract with the defendant and his associates to do that part of the sewer installation work that was not done by the city. There is nothing in the evidence to indicate that this initial conversation progressed any further until the plaintiff became active in the fall of 1963 and began arranging meetings between the parties. The jury could well conclude and infer that whatever transpired between Doerfler and Wieseler in 1962 was of no significant consequence and that nothing would have resulted except for the negotiations initiated by the plaintiff in 1963, and that those negotiations resulted in bringing about the sale.

Unfortunately, the facts in this record are not conclusive in either direction and would support an inference in favor of the defendant as well as the inference that the plaintiff was the procuring cause. However, "where more than one reasonable inference can be drawn from the credible evidence, we must accept the one drawn by the trier of fact." *Hanz Trucking, Inc., v. Harris Brothers Co.* (1965), 29 Wis. (2d) 254, 262, 138 N. W. (2d) 238. *Accord, Acme Equipment Corp. v. Montgomery Co-operative Creamery Asso.* (1966), 29 Wis. (2d) 355, 363, 138 N. W. (2d) 729.

Since the evidence would support an inference in favor of either party and the inference to be drawn was properly for the determination of the jury, a judgment based upon the jury verdict must be sustained.

*Sufficiency and Correctness of the Instructions.*

The defendant objects to the following portion of the jury instructions:

"The evidence discloses that J. K. Rath did enter the employment of Joseph Doerfler as a real estate salesman. This is undisputed. The dispute arises as to the sale of 46 lots in the Northwood Park Plat. Mr. Rath claims that his actions and doings were the procuring cause in selling

the lots and that he was, therefore, entitled to a commission under the terms of this agreement.

"A broker employed to find a purchaser for real estate may be the procuring cause of sale and is entitled to a commission thereon if he initiates the negotiations which result in the sale. Mr. Doerfler claims that the sale of the 46 lots to Wieseler, Calnin & Goss was consummated before hiring Mr. Rath, and he was awaiting the actions of the City of Appleton to determine who would install the utilities. Who is correct in these contentions is for you to determine.

"Now, the amount of commission on the sale of 46 lots for $70,000 is not an issue either. The Court, as you can see when you examine the verdict, has answered Question No. 2 for you, but you must decide who brought about the sale of the lots. As I have said, who was the procuring cause? The plaintiff contends that it was he who did so. In finding for the plaintiff, you must inquire into the relationship of cause and effect that existed in the sale of the lots, and it must appear to you by the greater weight of the credible evidence that the actions and doings of the plaintiff were the factors actually operating in producing the sale of the lots . . . ."

The defendant contends that the instructions and the special-verdict question should have informed the jury that the plaintiff was not entitled to a commission unless he actually sold the lots to Wieseler, and that it is not enough to be the procuring cause of the sale. Also, that if it was proper to instruct the jury in terms of procuring cause, the instructions given did not sufficiently set forth the elements of procuring cause.

This case requires a determination as to when a real-estate salesman earns his commission from his broker. This is not a case of when or how a real-estate broker or salesman earns his commission from the seller.

Our attention has not been directed to any case in this state involving jury instructions in an action brought by a real-estate salesman against a real-estate broker for commissions. Also, the brief written memorandum appearing in the record as to the employment relationship between the plaintiff and the defendant is not helpful.

*Kahn v. Levy* (1958), 391 Pa. 124, 129, 137 Atl. (2d) 291, 294, is a case of a salesman bringing an action against a broker for a real-estate sales commission. The appellate court said the trial court properly charged the jury when it did so as follows:

" 'The question is, what did he do towards the ultimate result? Did his activities, his participation in the thing, lead, as a consequence to the ultimate result, without his knowledge in the last stages? . . . Do you believe that Mr. Kahn's participation in this transaction can be reasonably and honestly held to be and found to be an efficient and procuring cause of the ultimate sale? . . . The key point there is that you will have to decide whether the ultimate sale was through the intervention of the activities of Kahn, not whether he was there at the end.' "

Procuring cause is defined in substantially the same terms as in the instructions in the instant case.

The appellant claims that the verdict should be reversed because the court at one point in the instructions used the word "broker" when referring to the plaintiff, *supra.* However, the same instruction refers to Rath as the employee and specifically states that it is the undisputed fact that "J. K. Rath did enter the employment of Joseph Doerfler as a real estate salesman." The instructions given also state that the defendant claims the sale was consummated before hiring Rath when they should have correctly stated that the defendant claims he initiated the sale before hiring the plaintiff and that Doerfler was thereby prejudiced.

Sec. 274.37, Wis. Stats., provides:

"274.37 **Judgments; application to reverse or set aside; new trial; reversible errors.** No judgment shall be reversed or set aside or new trial granted in any action or proceeding, civil or criminal, on the ground of misdirection of the jury, or the improper admission of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court to which the application is made, after an examination of the

entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure the new trial."

Under this section of the statute, an instruction should be viewed in its entirety and portions thereof not taken out of context. Thus viewed as a whole, the instruction in the instant case was free from prejudicial error.

### *Adverse Examination.*

At the close of the defendant's case, counsel for the defendant offered into evidence without reading, the entire adverse examination of plaintiff Rath. The trial court denied the admission of the adverse examination in this manner and the defendant claims this was prejudicial error and relies primarily on *Demochitz v. Wells* (1934), 214 Wis. 599, 253 N. W. 790, where this court said at page 602:

". . . Counsel stated he had examined him on part of it and said 'I offer the whole deposition at this time.' The judge said he did not think that was proper. The judge was in error here, but it seems manifest that had counsel offered such parts of the examination as he desired that he had not already covered in his cross-examination such parts would have been received. The examination is not in the bill of exceptions, and we cannot presume that there was anything in it contradictory of or not covered by the plaintiff's testimony. In this situation we cannot assume that the error was prejudicial."

*Demochitz, supra,* does not require reversal for a number of reasons. In the instant case, counsel for the defendant did extensively use the deposition in cross-examination and as stated in *Demochitz, supra,* it seems manifest that had counsel offered such parts of the examination as he desired that he had not already covered in his cross-examination, such parts would have been

received. Also, in this case we have the benefit of the adverse examination in the record, and while defendant claims that it contains certain contradictions to the plaintiff's testimony, he does not spell out the contradictions he was referring to except as developed in his cross-examination. We have, however, carefully examined the adverse examination and can find no material contradictions or other prejudicial material not fully brought out by the testimony at the trial.

Other jurisdictions and authorities have considered the proper procedure as to the use of adverse examinations of the parties to the action during the trial.

*Hill v. Interstate Transit Lines* (1939), 137 Neb. 110, 288 N. W. 508, 510:

"The proper procedure in cases of this kind is to offer the deposition by question and answer, and thereby give the opposing party opportunity to object to the admission thereof, and also give opportunity to the trial court to rule thereon, subject to the statutory limitations applicable to depositions. Any other rule would permit a litigant to abuse the power of compulsory testimony by deposition and might result in the admission of testimony that would be properly excluded were the witness present on the stand. . . ."

The same rule is also set forth in 2 *Conrad, Modern Trial Evidence,* p. 138, sec. 916, as follows:

"A deposition is not a document to be formally offered and marked as an exhibit at the trial but is testimony to be read at the trial, so far as relevant and competent, as though the witness were present in court. The proper procedure is to offer the deposition by question and answer, and thereby give the opposing party the opportunity to object to the admission thereof, and also give opportunity to the trial court to rule thereon."

We approve of the procedure above set forth.

*By the Court.*—Judgment affirmed.