ESTATE OF BAKER: FIRST NATIONAL BANK & TRUST COM-
PANY OF BELOIT, Executor, and others, Appellants,
v. JOHNSON, Respondent.

*No. 101. Argued February 3, 1971.—Decided March 2, 1971.*
(Also reported in 184 N. W. 2d 72.)

For the appellants there was a brief by *Lawrence W. Rice* of Beloit, for Ronald Baker, Charles E. Baker, and Gwen Hamilton, and by *Frank X. Kinast* of Beloit, for First National Bank & Trust Company of Beloit, and oral argument by *Mr. Kinast*.

For the respondent there was a brief by *William F. Donovan* and *Noll, Donovan & Bolgrien,* all of Beloit, and oral argument by *William F. Donovan*.

WILKIE, J.   All parties agree that the only issue presented by this appeal is whether the finding and judg-

ment of the trial court, that the date of execution of the codicil was October 30, 1967, is contrary to the great weight and clear preponderance of the evidence.[1]

Viewing the evidence in the light most favorable to the finding made, there is no reason for us to reverse the trial court's decision.

At the trial the two attesting witnesses testified that they both saw the decedent affix his signature to the codicil, and that they then signed it in his presence and in the presence of each other; hence the requirements of secs. 238.06 and 990.01 (47), Stats., were satisfied. This testimony is not contradicted. There is no contention that decedent was incompetent or that the codicil was the result of any undue influence. Therefore, the only issue before the trial court, as here, was the date of execution of the codicil.

Evidence relating to the date of execution is in some conflict, but the following evidence was elicited at trial:

October 28, 1967, was a Saturday; October 30, 1967, was Monday.

Sally Johnson, the daughter-in-law of Flossie Johnson, was present when the codicil was executed. She testified that the date of execution was Monday, October 30, 1967. She stated it was her usual routine to go to the motel every Monday morning to permit her mother-in-law to run errands and that she did so on the date in question, arriving at approximately 8 or 8:15 a. m.; that on the morning in question her mother-in-law called Mr. and Mrs. Sumner Jackson to the motel before she left to do her errands, although Sally Johnson could not say what time it was. As to the change of date of the codicil from October 28th to 30th, she testified:

[1] All parties also agree that the burden of establishing the validity of the codicil (in this instance, the date of execution) is upon the proponent, Flossie Johnson, "by the fair preponderance and weight of the evidence." *Will of Faulks* (1945), 246 Wis. 319, 357, 17 N. W. 2d 423.

"Harry looked at the calendar and we have this one from the First National Bank at the motel in the office, and it said on it the 28th and he looked over at the other calendar and he said, it is Monday. Because there is another calendar over on the other, just straight across,— he looked on it and said it is Monday, it can't be the 28th, and he struck it out."

She stated that Flossie Johnson returned home around 12 or 12:30. Sally Johnson said she (Sally) was around the motel grounds on that morning, in the house and in and out of the motel frequently.

The two Jacksons, attesting witnesses, testified:

Jean Jackson said that she could not recall the date or the day of the week, but that the codicil was signed "after 11 or around noon." She remembered this because she was preparing lunch at the time she was called to go over to the motel.

Sumner Jackson, Jean Jackson's husband, stated that he could not state the date or day of week the instrument was executed. His only point of reference was that on Monday he would have taught from 10 a. m. to 11 a. m., on Saturday from 10 a. m. to 12 noon; hence he would have been home earlier on Monday than on Saturday. However, he also stated that the codicil could have been executed the week before, so far as his recollection was concerned.

Iva Jones Fewell, the notary who notarized the codicil, testified that on Monday, October 30, 1967, she was called from her office at the S & H Bus Company in Beloit where she was employed as a bookkeeper. A "little old man," "quite elderly and quite shaky," requested her to notarize a document which she identified as the codicil. He was accompanied by someone, whom she thought might have been a man; she could not identify him. She further testified that she had only recently received her notary's seal at that time; that she questioned the propriety of notarizing a document not signed

in her presence; that the old man said "this is a gift that I want someone to have and I want it notarized so it would be legal;" and that she then had the old man write his signature on another paper three times, compared these signatures with that on the document to be notarized, and then notarized it. She further testified that the date as it appeared on the codicil at the time of the hearing was exactly as it appeared when she notarized it. She was sure it was on Monday, October 30th, and not Saturday the 28th, because she did not work on Saturdays.

Ronald Baker and Charles Baker, nephews of the decedent and two of the three residuary legatees named in the will executed on October 29, 1967, were in Beloit from Saturday, October 28th until Tuesday, October 31st. They both testified that they went to the motel at approximately 9:30 or 10 a. m. on October 30, 1967, but could not find the decedent although the motel office was open. They returned around 11 a. m., the office was still open, but no one was there. However, a lady at one end of the motel informed them that the decedent and Flossie Johnson had been gone for some time. They returned again around 12:15 p. m. but found no one there, although the office was open; two later stops were made and no one was there. Throughout the day Ronald Baker made three calls to decedent's attorney regarding their inability to find the decedent.

Memoranda of calls received by the secretary of Attorney Kinast, decedent's attorney, were introduced into evidence. They indicate calls from Ronald Baker on Monday, October 30, 1967, at 11:21 a. m., noon, and 3:24 p. m., to the effect that they had been to the motel, learned that the decedent had left with Flossie Johnson and that on their last trip to the motel the office was locked, although it had been open before.

Attorney Kinast testified that he, personally, placed a call to the motel at approximately 12:15 p. m. on October 30, 1967, in response to the first memorandum, but received no answer.

The evidence is not so much in conflict as it is incomplete. There are gaps as to the activities of decedent after the execution; the man accompanying him to notarize the codicil was not available to testify, and Flossie Johnson did not testify. The record might have been more complete had Flossie Johnson been represented by counsel from the beginning of the proceedings, but she was not.

Appellants contend that the determination of the trial court was against the great weight and clear preponderance of the evidence. They argue that the only evidence presented to indicate that the codicil was executed on October 30, 1967, is the testimony of Sally Johnson, Flossie Johnson's daughter-in-law, and that the testimony was incredible since the decedent's nephews went to the motel several times on October 30, 1967, and found no one there, although Sally Johnson testified that she was around the motel all morning and that Flossie Johnson returned around noon. They also note that one of the attesting witnesses testified the codicil was executed "around noon" and that the notary was sure she notarized the will around 9 or 10 in the morning of October 30th. Therefore, they argue, the codicil must have been executed around noon on the 28th, the will on the 29th, and the codicil notarized on the 30th.

The difficulty with this argument is that the appellants offered no positive evidence that the codicil was executed on the 28th which rebuts the definite testimony of Sally Johnson. Neither attesting witness had any idea as to the date of execution. One said it was around noon because she was preparing lunch; the other could not remember the time of day, but noted his records

disclosed that at that time he taught until 11 a. m. on Mondays and until noon on Saturdays, hence he would probably have been home earlier on the 30th than on the 28th.

The only other evidence presented is the testimony of the two nephews that they made several trips to the motel and found no one there, and that they made three calls to decedent's attorney to report what they found; and the testimony of decedent's attorney that he called the motel at 12:15 p. m., and received no answer.

In light of this evidence, sketchy as it is, we cannot say that the trial court's decision was against the great weight and clear preponderance of the evidence. The credibility of witnesses and the weight to be accorded their testimony is for the trial court, and where more than one reasonable inference can be drawn, this court must accept that drawn by the trial court.[2] Although there is evidence which would support a contrary finding, it cannot fairly be said to constitute the great weight and clear preponderance of evidence which is required to justify a reversal.[3]

*By the Court.*—Judgment affirmed.

---

[2] *Rath v. Doerfler* (1967), 35 Wis. 2d 494, 151 N. W. 2d 151; *Hanz Trucking, Inc. v. Harris Brothers Co.* (1965), 29 Wis. 2d 254, 138 N. W. 2d 238.

[3] *Mitchell v. Western Casualty & Surety Co.* (1966), 30 Wis. 2d 419, 421, 141 N. W. 2d 212. *See also: Navine v. Peltier* (1970), 48 Wis. 2d 588, 596, 180 N. W. 2d 613.