21618.   ATLANTA & WEST POINT RAILROAD
COMPANY v. UNDERWOOD.

ARGUED JUNE 12, 1962—DECIDED JULY 9, 1962—
REHEARING DENIED JULY 23, 1962.

194

*Heyman, Abram, Young, Hicks & Maloof,* for plaintiff in error.
*Greene, Neely, Buckley & DeRieux,* contra.
*Henry B. Troutman, T. M. Smith, Jr., Tench C. Coxe, Troutman, Sams, Schroder & Lockerman,* for parties at interest.

MOBLEY, Justice. ▉ We deal first with the question of the right of the railroad company to invoke, as negligence per se, the violation by the taxicab driver while carrying a fare-paying passenger of the duty prescribed by *Code Ann.* § 68-1663, the pertinent portion of which reads as follows: "(a) The driver of any motor vehicle carrying passengers for hire . . . before crossing at grade any track or tracks of a railroad, shall stop such vehicle within 50 feet but not less than 15 feet from the nearest rail of such railroad and while so stopped shall listen and look in both directions along such track for any approaching train, and for signals indicating the approach of a train, except as hereinafter provided, and shall not proceed until he can do so safely. . ." The Court of Appeals held that this section was enacted for the protection of the fare-paying passenger and that the railroad cannot invoke the failure of the driver of the taxicab to obey the statute as negligence per se on the part of the plaintiff. The railroad company in its petition for certiorari excepts to this ruling.

While probably true that this statute was enacted primarily for the protection of the fare-paying passenger in taxicabs, it cannot be gainsaid that the purpose of the legislation was to avoid collisions between trains and motor vehicles at railroad crossings. Therefore, we must conclude that the railroad does fall within that class for whose benefit the statute was enacted,

and that the Court of Appeals erred in applying the rule relied on by the plaintiff which is well stated in *Huckabee v. Grace*, 48 Ga. App. 621, 632 (173 SE 744), as follows: "The court in determining whether the violation of a statutory requirement is negligence per se as to the person complaining thereof upon which a cause of action will rest, will look to the particular statute in respect to its purposes, that is, the evils it was intended to guard against and the persons it was intended to protect."

The cases relied upon by the Court of Appeals are distinguishable on their facts from this case. *Platt v. Southern Photo Material Co.*, 4 Ga. App. 159 (60 SE 1068), involved legislation designed for the protection of children working in a factory. The plaintiff was not a child, so he did not come within the protection of the statute. In *Central of Ga. R. Co. v. Griffin*, 35 Ga. App. 161 (132 SE 255), plaintiff sought to invoke a statute requiring trains to stop at intersecting railroad crossings, in an action brought by him against the railroad for injury sustained in a collision of an automobile and train on a nearby highway. The evil which the legislature sought to remedy was to prevent collisions of trains at crossings of intersecting railroad lines and one injured at the nearby crossing of a railroad and highway would not come within the class for whose protection the statute was enacted. Other cases cited by the Court of Appeals are *Etheridge v. Guest*, 63 Ga. App. 637 (12 SE2d 483); *Grant v. McKiernan*, 82 Ga. App. 82 (60 SE2d 794); *Whitley Const. Co. v. Price*, 89 Ga. App. 352 (79 SE2d 416). In the instant case if plaintiff's taxicab had collided with another automobile at the crossing the requirement of *Code Ann.* § 68-1663 that he stop at the crossing could not be invoked against him in an action between the parties, as this would not be an evil which the legislature sought to remedy—train-taxicab collisions.

Section 68-1663 was properly charged by the trial court in this case, as the purpose of the statute was the avoidance of collisions between trains and taxicabs occupied by fare-paying passengers. The evil which the legislature sought to guard against was the danger of such collisions and the purpose of the stat-

ute was to remedy such potential evil. The legislation clearly governs the very occurrence that happened here, and necessarily it was for the protection not only of the passenger but of anyone who was injured or damaged, including the driver of the taxicab and the railroad or its employees.

■ Error is assigned on the ruling of the Court of Appeals in the first headnote and first division of the opinion upholding the validity of the ordinance of the City of Atlanta which provides: "It shall be the duty of every person operating trains across grade crossings in the city to provide at each such grade crossing complete public safety from danger from approaching trains for all persons using the streets at such crossings. For this purpose persons operating trains or having control of the tracks shall place and keep at such grade crossing at all times a watchman or flagman, or shall install, operate and maintain standard automatic gates or signaling devices, sufficient to protect the public fully from the danger of an approaching train." Mun. Code of Atlanta, 1953, § 48.2.

· Petitioner in certiorari says that the primary and basic issue raised is the validity of this ordinance "prescribing a duty for railroad companies to provide at each grade crossing in the city 'complete public safety from danger from approaching trains for all persons using the streets at such crossings' · and requiring such companies to maintain at such crossings at all times a watchman or brakeman or standard automatic gates or signaling device sufficient to meet the standard required."

This ordinance says in plain, unambiguous, and positive language that "it shall be the duty of every person operating trains across grade crossings in the city to provide at each such grade crossing complete public safety from danger from approaching trains for all persons using the streets at such crossings." "Where, as here, the language of a Code section is plain, unambiguous and positive, and is not capable of two constructions, no court has a right to construe it to mean anything other than what it declares, and this rule, of course, precludes the courts from construing it according to what is supposed to be the legislative intent." *Sirota v. Kay Homes*, 208 Ga. 113, 115 (65 SE2d 597).

This ordinance imposes upon the railroad a greater duty than that required by the general law of the State, which is ordinary care and diligence. This court in *Atlantic C. L. R. Co. v. Waycross Power Co.*, 123 Ga. 613 (1) (51 SE 621), held that a charge that a presumption of negligence of the railroad in the running and operation of its train is subject to be rebutted by evidence showing that everything which could have been done by the agents and servants of the railroad to avoid the killing or injury was done, placed upon the railroad company the burden of proving that its employees exercised the highest degree of care known to the law, when only ordinary care and diligence was required of them and was erroneous.

In *East Tenn. V. &c. R. Co. v. Miller,* 95 Ga. 738 (22 SE 660), this court held that it was error to charge that a railroad company as to its passengers was required to observe "the utmost care and diligence" in lieu of the actual duty of extraordinary care. See also *Savannah, F. &c. R. Co. v. Wideman,* 99 Ga. 245 (25 SE 400); *East Tenn., V. &c. R. Co. v. Daniel,* 91 Ga. 768 (18 SE 22); *Louisville &c. R. Co. v. Rogers,* 136 Ga. 674 (71 SE 1102); *Atlantic C. L. R. Co. v. White,* 129 Ga. 668 (59 SE 898).

While the General Assembly may enact a general law increasing the degree of care required of railroad companies, a city does not have the authority to require a greater degree of care than that imposed by general law. "Municipal ordinances must be reasonable. The limitations of the power of a city council in this regard are not to be measured by the more extensive powers of the State legislature." *City of Acworth v. Western &c. R. Co.,* 159 Ga. 610, 619 (126 SE 454).

The city has full authority "to prescribe that within the city the standard of reasonable care for railroads includes the duty to have in action a man or device giving plainly visible signals that are adequate to give warning that a train is approaching, for a sufficient length of time before the train enters a crossing to enable people to stop before the train reaches the crossing," but we cannot agree with the Court of Appeals that this ordinance does no more than that. The requirement that the railroad provide "complete public safety" and do those things which

are "sufficient to protect the public fully" from danger of approaching trains requires much more than ordinary care and diligence which is required by the general law of the State.

We agree with the ruling of the Court of Appeals in Headnote 2 and Division 2 of the opinion that evidence of plaintiff's mental distress caused by his inability to care for his invalid wife and to care for and play with his children, which disability resulted from his bodily injury, was admissible to show an element of pain and suffering and that the allegations of such were not demurrable as an attempt to plead evidence.

*Judgment affirmed in part; reversed in part. All the Justices concur.*