A94A1949. LUKE et al. v. SUBER.
(456 SE2d 598)

POPE, Presiding Judge.

Plaintiffs Karen and Marcus Luke appeal from a jury verdict for defendant obstetrician. Because the trial court improperly allowed defendant to elicit testimony regarding plaintiffs' insurance coverage, we reverse the judgment entered on the jury verdict and remand the case for a new trial.

Defendant performed a caesarean section on Karen Luke on Friday, February 2, 1990. Although the baby was healthy, the mother

suffered from ileus (paralysis of the bowel) following the surgery. Her stomach became severely distended, she was in extreme pain, and her pulse and respiration rates were elevated. Post-surgery ileus is not unusual, and defendant pursued a usual course of treatment. Luke's condition continued to worsen for several days, however, and defendant eventually called in Dr. Clark, a general surgeon, on February 6, 1990. Dr. Clark operated and discovered a perforation in Luke's bowel, which had resulted in gross contamination of her abdominal cavity. About half of Luke's large intestine had to be removed, as well as a portion of her small intestine.

The evidence with respect to defendant's liability would have supported a verdict for either plaintiffs or defendant. Plaintiffs presented expert testimony that the bowel was damaged by defendant in the course of the original surgery; that this damage caused the ileus and eventually the perforation; that defendant should have realized sooner that Luke was suffering from more than normal post-surgery ileus; and that defendant's failure to call in the surgeon earlier caused the damage to Luke's intestines to be more severe than it otherwise would have been. Defendant's experts, on the other hand, testified that defendant did not damage the bowel in the course of the original surgery; that Luke's symptoms were all consistent with normal post-surgery ileus until the morning of February 6, 1990, when her condition seriously worsened; that x-rays taken February 4 indicated there was no perforation at that time; that the perforation was simply the result of the extreme distension resulting from the ileus, which cut off the blood supply to that area; and that the perforation probably did not occur until the morning of the 6th, or the contamination of Luke's abdomen would have been worse.

1. Plaintiffs argue that defendant should not have been allowed to question Mr. Luke about plaintiffs' medical insurance coverage, and we agree. See *Denton v. Con-Way Southern Express*, 261 Ga. 41 (402 SE2d 269) (1991).

Citing *Moore v. Mellars*, 208 Ga. App. 69 (430 SE2d 179) (1993), defendant argues the collateral source evidence was properly allowed to impeach Mr. Luke. Specifically, defendant contends Mr. Luke "opened the door" when, following testimony that the baby was healthy, Mr. Luke testified on direct as follows: "Q: Did the baby also stay in the hospital from the 6th through the 28th? A: Yes, sir. Q: And what was your understanding of that? A: Well, whenever I talked to a couple of doctors and nurses, they told me don't worry about it, you know, it's best that the baby stays here. That way Karen can, you know, know that the baby is all right. I told them, I said, 'I don't think I can afford to keep the baby in the hospital for a month.' And they said don't worry about it, you know. I didn't worry about it until they — Q: Did you also receive a bill for the baby in the hospital? A:

Yes, sir."

In *Moore*, we held that otherwise inadmissible evidence of insurance could be admissible for impeachment purposes, stating that "when plaintiff opens the door and testifies that lack of insurance or financial hardship prevented her from seeking treatment, defendant is allowed to cross-examine her on this point." 208 Ga. App. at 72. The plaintiff in *Moore* actually testified that she discontinued her examinations because she no longer had insurance. In *Patterson v. Lauderback*, 211 Ga. App. 891 (2) (440 SE2d 673) (1994), we took this holding one step further: even though the plaintiff in *Patterson* did not actually testify that his decedent was deprived of medical care because she lacked insurance, evidence of the decedent's insurance was admissible for impeachment because "[t]he clear import of the testimony presented by the deceased's son regarding his mother's lack of wealth was that she was not able to afford all the extensive medical treatment she would need as a result of her injuries." 211 Ga. App. at 892-893. In this case, Mr. Luke's testimony did not even suggest that plaintiffs lacked insurance or were unable to afford needed medical care. Rather, the clear import of the testimony was that even though the Lukes had insurance, Mr. Luke understandably doubted that it would cover hospitalization of a *healthy* baby simply because the mother was hospitalized.

Because evidence of insurance is so prejudicial, it should not be admitted unless it is clearly relevant. See *Collins v. Davis*, 186 Ga. App. 192 (1) (366 SE2d 769) (1988) (physical precedent only), cited with approval in *Denton*, 261 Ga. at 43. In this type of case, this means that evidence of insurance should not be admitted unless it is clearly impeaching (i.e., unless the testimony which purportedly "opens the door" is clearly inconsistent with the existence of insurance). Here, Mr. Luke's testimony was fully consistent with the existence of insurance, so evidence of insurance was not impeaching and therefore not admissible.[1]

Accordingly, the trial court erred in allowing this evidence. Moreover, given our Supreme Court's statements that evidence of insurance " 'involves a substantial likelihood of prejudicial impact' " and "is inherently prejudicial because its infectious nature tends to contaminate the entire trial" (*Denton*, 261 Ga. at 43), we cannot deem

---

[1] Contrary to the dissent's suggestion, it is undisputed that the baby was well and did not need hospital care; the medical professionals suggested the baby remain in the hospital to be near plaintiffs. A plaintiff does not "open the door" to allow evidence any time he mentions his financial circumstances or says he cannot afford something. Since the exception to the general rule disallowing evidence of insurance is based on its relevance for impeachment purposes, a plaintiff's testimony — even if it addresses his inability to afford something — only "opens the door" if it is inconsistent with, and thus impeached by, the existence of insurance.

this error harmless, particularly in light of the relatively balanced testimony regarding liability in this case.

2. In three enumerations of error, plaintiffs contend that a number of potential jurors should have been excused for cause.[2] Some of the challenged jurors allegedly had economic ties to defendant, and others were former patients of defendant (or husbands of former patients of defendant).

"There are two types of challenges to an individual juror for cause: (1) for principal cause, and (2) for favor. Challenges for principal cause are based on facts which, if proved, automatically disqualify the juror from serving. Challenges for favor are based on admissions of the juror or facts and circumstances raising a suspicion that the juror is actually biased for or against one of the parties." (Citations omitted.) *Jordan v. State*, 247 Ga. 328, 338 (6) (276 SE2d 224) (1981). Where challenges for favor are involved, " '[t]he trial judge has a discretion in determining whether a juror can decide the case in accordance with the evidence presented during the trial and without bias or partiality or outside influences. Unless there is manifest abuse we cannot require a new trial. (Cit.)' [Cit.]" *Stein Enterprises v. Chatham County*, 200 Ga. App. 385, 386 (2) (408 SE2d 173) (1991).

With respect to alleged financial ties between jurors and defendant based on the jurors' employment in or ownership of pharmacies, the trial court did not abuse its discretion in failing to excuse the jurors, as there was no evidence of any business arrangement between the jurors and defendant "whereby the juror[s] could be motivated by financial concerns." See *Daniel v. Bi-Lo*, 178 Ga. App. 849, 851 (1) (344 SE2d 707) (1986). Indeed, the record indicates that the usual practice is for the doctor to give the patient the prescription, and the patient then takes it to the pharmacy of his choice.

We find the challenges based on a former doctor-patient relationship between defendant and certain jurors more troubling, and believe the better practice would be to eliminate defendant's former patients (and their spouses) from the panel of potential jurors if possible. However, the trial court's discretion in this area is extremely broad, particularly in civil cases; and where the potential juror says he can be objective, we have held there was no abuse of discretion in failing to excuse the juror under circumstances at least as suspicious as those present here. See *Green v. Wilcox*, 206 Ga. App. 192 (424 SE2d 801) (1992) (in medical malpractice action, it was not an abuse of discretion to fail to excuse another doctor associated with the same hospital as defendant, as long as doctor indicated he could be impar-

---

[2] Although the judgment must be reversed based on our decision in Division 1, we address the issues raised by plaintiffs' challenges to the panel of prospective jurors because they are likely to be raised again on retrial.

tial); *Stein Enterprises*, 200 Ga. App. at 385 (2) (where juror said he could be objective, it was not an abuse of discretion to fail to excuse him even though he formerly worked for one party's expert witness and owned property with him at time of trial). Compare *Meintzer v. Weinberg*, 212 Ga. App. 307 (1) (441 SE2d 774) (1994) (failure to excuse juror where questioning revealed he could not be objective was an abuse of discretion).

Plaintiffs urge us to hold that the existence of a doctor-patient relationship between a party and a potential juror provides a basis for a challenge for principal cause, so that any juror who is the defendant's present or former patient would be categorically excluded. We do not consider it necessary to create such a categorical exclusion, however. Rather, the existence of the doctor-patient relationship is a circumstance raising a suspicion that the potential juror may be biased. Either party may then question the potential juror to establish bias, and may move the court to excuse the potential juror for cause. See *Hill v. Hosp. Auth.*, 137 Ga. App. 633 (1) (b) (224 SE2d 739) (1976) (potential jurors whose family members were patients of the defendant doctor need not be excused for cause as long as they stated they could decide the case without bias).

*Judgment reversed. McMurray, P. J., Johnson, Blackburn and Ruffin, JJ., concur. Beasley, C. J., Birdsong, P. J., Andrews and Smith, JJ., dissent.*

SMITH, Judge, dissenting.

I respectfully dissent to Division 1 of the majority opinion, because I conclude that plaintiff Marcus Luke "opened the door" to cross-examination regarding evidence of insurance coverage by testifying that he did not believe he could afford certain hospital care. The crucial part of Mr. Luke's testimony was: "I told them, I said, 'I *don't think I can afford* to keep the baby in the hospital for a month.'" (Emphasis supplied.) This not only suggests but clearly states, as the majority phrases it, that plaintiffs "were unable to afford needed medical care," either because of lack of wealth or lack of insurance. *Patterson v. Lauderback*, 211 Ga. App. 891, 892-893 (2) (440 SE2d 673) (1994).

I cannot conclude, as the majority suggests, that the jury may have attributed Mr. Luke's testimony to concern about whether the baby would be covered by existing insurance. The conversation took place with hospital personnel, rather than with anyone who could have informed Mr. Luke about insurance coverage. Insurance itself was not mentioned; instead, Mr. Luke stated that *he* did not think *he* could afford the hospital charges. This is an even more explicit comment on inability to pay than the testimony in *Patterson* that the plaintiff "was not a wealthy woman." 211 Ga. App. at 892. This con-

clusion is reinforced by counsel's follow-up question, "Did you also receive a bill for the baby in the hospital?" which suggests that the testimony regarding inability to afford hospital bills was not an inadvertent, nonresponsive comment by Mr. Luke, but deliberately elicited for the benefit of the jury. Under these circumstances, the trial court did not err in allowing limited evidence of insurance to respond to the "clear import" of Mr. Luke's testimony. Therefore, I must dissent to the majority's ruling in Division 1.

I am authorized to state that Chief Judge Beasley, Presiding Judge Birdsong and Judge Andrews join in this dissent.

DECIDED FEBRUARY 27, 1995 —
RECONSIDERATION DENIED MARCH 30, 1995 — 

*Hallman & Stewart, Ronald W. Hallman, Sutton & Associates, Berrien L. Sutton,* for appellants.

*Newton, Smith, Durden, Kaufold & Rice, Wilson R. Smith,* for appellee.