S95G1171. WARREN v. BALLARD et al.
S95G1212. SUBER v. LUKE et al.
(467 SE2d 891)

BENHAM, Chief Justice.

Although these two cases were not tried together in the trial court and were not heard together in the Court of Appeals, we granted certiorari in both to consider the same question, namely, when may a tort defendant elicit testimony regarding insurance coverage for purposes of impeachment. *Ballard v. Warren*, 217 Ga. App. 23 (1) (456 SE2d 589) (1995); *Luke v. Suber*, 217 Ga. App. 84 (1) (456 SE2d 598) (1995).

1. We begin with a discussion of the facts of each case, as well as the Court of Appeals' holdings.

(a) *Warren v. Ballard* centers around a three-vehicle accident which occurred on June 11, 1990, on I-24 in Dade County, between a car driven by Warren, a van driven by Ballard and a tractor-trailer owned by defendant Foster Trucking Company and operated by defendant Walls. At trial, Ballard admitted that he caused the accident by pulling from a road shoulder onto I-24 into the path of the other vehicles. Thus, the main issue at trial was that of damages, and the jury awarded Warren a verdict of $78,500 from Ballard.

During the course of the trial, Warren testified concerning the amount of her physical therapy costs: "I don't know the exact total. I'd have to look at figures to remember. I just know that I have a total of medical bills that is around $7,000. . . . I had to pay for my medical bills. And just to be driving down the road one day and all of a sudden my life turned upside down and have to face these medical bills and . . . ." She also stated: "And I'm still paying for these medical bills on a payment plan right now because I can't, of course, pay

all at one time. So I'm paying monthly right now for the medical bills." Warren then read to the jury a list of her medical bills which totaled $6,287.22. Warren's husband testified: "The interest I have is that ultimately all payment from this accident has fallen on us. And the interest I have is to be able to pay those bills and replace her car which has all come back on us as a family." After the testimony, Ballard's counsel, in a side bar conference with the trial judge, sought to be allowed to cross-examine Warren and her husband as to whether they had received payments from State Farm, their insurance carrier. The trial court prohibited the defense attorney from inquiring about insurance benefits.

Although recognizing that a trial court has the discretion to balance the probative value of collateral source evidence against its prejudicial impact, the Court of Appeals held that the trial judge should have allowed cross-examination concerning collateral source evidence because Warren and her husband had given the jury a false impression that they incurred harm and hardship which they had not and in doing so had implied that they had no insurance coverage. *Ballard v. Warren*, 217 Ga. App. at 24-25.

(b) In *Suber v. Luke*, a medical malpractice case, Marcus Luke testified on direct examination about medical bills in excess of $80,000 incurred as a result of Dr. Suber's alleged negligence in perforating Karen Luke's colon during a cesarean section delivery. Luke later testified that the baby, who was unharmed, had stayed in the hospital with his wife during her recovery period. In response to the question, "And what was your understanding of that?," Luke replied: "Well whenever I talked to a couple of doctors and nurses, they told me don't worry about it, . . . it's best that the baby stays here, . . . I told them, I said, 'I don't think I can afford to keep the baby in the hospital for a month.' And they said don't worry about it." Luke was then asked whether he had received a bill for the baby's stay in the hospital. He responded, "Yes, sir. And like I started to say, I didn't worry about it until they sent me a bill on it." Suber did not object to this testimony, but on cross-examination, sought to impeach it by establishing that Luke had medical insurance which paid the bills to which he referred. Suber's attorney contended that Luke's testimony had "opened the door" for proof of health insurance coverage. After discussion with counsel, the trial judge concluded that Luke's testimony could be impeached by proof of insurance coverage. The trial resulted in a jury verdict for Suber.

The Court of Appeals reversed and granted a new trial, holding that Luke's testimony did not "open the door" and that the prejudicial effect of admitting the evidence outweighed its relevancy for purposes of impeachment.

2. We turn now to a consideration of the general proposition

whether collateral source evidence is admissible for impeachment in a case in which the plaintiff testifies to anxiety about payment of medical bills. We note that impeachment by evidence of collateral sources is only allowed if the false testimony is related to a material issue in the case. *Waits v. Hardy*, 214 Ga. 495, 496 (105 SE2d 719) (1958); *Mann v. State*, 124 Ga. 760 (53 SE 324) (1905). The question, then, is whether testimony regarding anxiety over payment of medical bills relates to a material issue. While evidence of the amount of medical bills may be admissible on a claim of pain and suffering to show the seriousness of the injury (see *Melaver v. Garis*, 110 Ga. App. 267 (138 SE2d 435) (1964)), we are aware of no authority which permits a recovery for anxiety, agony, or worry over the payment of medical bills. Since there can be no recovery for such anxiety, testimony concerning it does not relate to a material issue. That being so, there can be no impeachment of that testimony. *Waits v. Hardy*, supra. To the extent that *Patterson v. Lauderback*, 211 Ga. App. 891 (440 SE2d 673) (1994), and *Moore v. Mellars*, 208 Ga. App. 69 (430 SE2d 179) (1993), can be read to hold otherwise, they are overruled.

In neither of these appeals did the testimony relate to a material issue. Therefore, the defendant in neither case was entitled to impeach the testimony with collateral source evidence. The defendant is required in such circumstances to object to testimony regarding concern about payments of medical bills. Upon such objection, the trial court is obliged to exclude the testimony and, if requested, give curative instructions. In appropriate cases, other sanctions are available, such as rebuke of counsel, contempt of court, or even a mistrial with appropriate costs cast upon the plaintiff. The failure of the defendants in these cases to object constitutes waiver of the inadmissibility of the testimony. *Seabrooks v. State*, 251 Ga. 564, 567 (308 SE2d 160) (1983); *Pulliam v. State*, 236 Ga. 460 (224 SE2d 8) (1976). It follows that the Court of Appeals erred in ruling that the collateral source evidence was admissible in *Warren*, but was correct in ruling, albeit for an incorrect reason, that the evidence was not admissible in *Luke*.

*Judgment reversed in Case No. S95G1171. All the Justices concur, except Fletcher, P. J., and Sears, J., who dissent.*

*Judgment affirmed in Case No. S95G1212. All the Justices concur, except Fletcher, P. J., and Sears, J., who concur specially.*

SEARS, Justice, concurring specially in part and dissenting in part.

Today, the majority holds that neither defendant in these cases was entitled to offer evidence that the plaintiffs had received collateral source payments. The majority premises this holding on its conclusion that testimony regarding financial anxiety or distress created by the injuries inflicted upon a plaintiff is never admissible. I would

hold that evidence of financial hardship is admissible on a plaintiff's claim of mental pain and suffering when the financial hardship is the immediate consequence of the plaintiff's injury. Further, I would hold that, although evidence of collateral source payments is generally inadmissible in a personal injury action, it can become admissible if a plaintiff offers evidence on a material issue in the case that evidence of collateral source benefits tends to impeach and if the trial court determines that the probative value of such evidence outweighs its prejudicial effect. Applying these rules to the instant cases, I conclude that the defendant in Case No. S95G1171 should have the right to offer evidence of collateral source payments and that the defendant in Case No. S95G1212 should not. I therefore dissent to the majority's judgment in Case No. S95G1171 and concur specially in the judgment in Case No. S95G1212.

1. The majority errs in concluding that testimony of a plaintiff's financial hardship is never admissible in a personal injury action. Such evidence can be relevant to a plaintiff's claim for mental pain and suffering.

In a claim for mental pain and suffering, "[a]nxiety or worry proximately attributable to an injury is recoverable."[1] Further, in determining pain and suffering, the jury is "entitled to draw all such inferences from the evidence as are justified by the common experience and observations of mankind. The only measure of such damages is the enlightened conscience of the jury."[2] Moreover, we have specifically held that where a plaintiff's financial hardship is an immediate consequence of the plaintiff's injury, evidence of that hardship is relevant to a plaintiff's claim for pain and suffering.[3] For these reasons, I would hold that evidence of financial hardship created by a defendant's negligence is admissible in a plaintiff's personal injury action.

Further, numerous courts have recognized the relevance of a plaintiff's testimony that the injuries he has suffered have led to penurious circumstances, and have recognized that such evidence tends

---

[1] *Valdosta Housing Auth. v. Finnessee*, 160 Ga. App. 552 (1) (287 SE2d 569) (1981).
[2] Id.
[3] See Wilburn, Ga. Law of Damages (4th ed.), § 2B-3; *Wilson & Bro. v. White*, 71 Ga. 506, 514 (2) (1883). For examples of the wide-ranging type of evidence that is admissible on a claim for pain and suffering, see *Underwood v. Atlanta &c. R. Co.*, 105 Ga. App. 340, 350-351 (2) (a) (124 SE2d 758) (1962), aff'd *Atlanta &c. R. Co. v. Underwood*, 218 Ga. 193, 198 (3) (126 SE2d 785) (1962) (holding that while a plaintiff's domestic circumstances generally are irrelevant and immaterial in a personal injury action, when a plaintiff's inability to care for his invalid wife and five children is caused by the bodily injury in question, evidence that that inability has caused the plaintiff mental distress is relevant to the plaintiff's claim for pain and suffering), and *Gilbert v. Parks*, 140 Ga. App. 550 (1) (b) (231 SE2d 391) (1976) (holding it is not "error to charge that the loss or impairment of ability to work may cause grief, distress or worry and may be considered by the jury in determining damages for the pain and suffering").

to be impeached by evidence of collateral source payments. These courts, which follow the general rule that evidence of collateral source payments is irrelevant, permit the introduction of collateral source payments to counter the plaintiff's testimony.[4]

The rule that I would adopt for determining whether evidence of collateral source payments is admissible for impeachment in a personal injury action would necessitate an evaluation of the circumstances of each particular case. I would hold that if a plaintiff offers evidence as to a material issue in a case, and evidence of collateral source payments tends to impeach the plaintiff on that issue, then the defendant should have the right to present that evidence,[5] so long as the trial court determines that the probative value of such evidence outweighs its prejudicial impact.[6] If, on the other hand, the plaintiff offers testimony on an immaterial issue, and evidence of collateral source payments tends to impeach the plaintiff on that issue, the defendant has the right to object to the plaintiff's testimony and may not, in any event, offer evidence of collateral source payments as such evidence would be precluded by the rule that a witness cannot be impeached as to an immaterial matter.[7]

2. I turn now to my analysis of the present cases.

(a) In *Warren*, the Warrens' testimony of financial hardship related to a material issue — their mental pain and suffering — and Ballard thus had no valid ground to object to it. Further, because evidence that they received insurance payments tends to impeach their testimony on that material issue, the collateral source evidence may not be excluded based upon the rule that a witness may not be impeached with regard to a discrepancy on an immaterial matter.

Finally, because the Warrens expressly testified that the expenses

---

[4] E.g., *Baystate Moving Systems v. Bowman*, 590 A2d 462, 464 (2) (Conn. App. 1991); *Corsetti v. Stone Co.*, 483 NE2d 793, 803-804 (8) (Mass. 1985); *Moore v. Missouri Pacific R. Co.*, 825 SW2d 839, 842 (Mo. 1992); *Gladden v. P. Henderson &c.*, 385 F2d 480 (3rd Cir. 1967); *Lange v. Missouri Pacific R. Co.*, 703 F2d 322, 324 (4) (8th Cir. 1983); *Hack v. State Farm Mut. Auto. Ins. Co.*, 154 NW2d 320, 325 (8) (Wis. 1967).

[5] See *Morris v. State Farm Mut. Auto. Ins. Co.*, 203 Ga. App. 839, 842 (418 SE2d 119) (1992) (evidence that tends to prove or disprove any material fact which is at issue in the case is relevant for impeachment, and a party may show anything which may, in the slightest degree, affect the credit of an opposing witness).

[6] Given the "inherently prejudicial" nature of evidence that a plaintiff has received insurance payments, see *Denton v. Con-Way Southern Express*, 261 Ga. 41, 43 (402 SE2d 269) (1991), a trial court should always give careful consideration to whether the prejudicial effect of collateral source evidence outweighs its probative value.

[7] E.g., *Waits v. Hardy*, 214 Ga. 495, 496 (105 SE2d 719) (1958). For example, if a plaintiff testified that he had been a poor person all his life and currently had no money, and the plaintiff did not in any way contend that his financial distress resulted from the injuries he had suffered, the plaintiff's financial condition would be irrelevant and immaterial. The defendant could thus object to that testimony, but could not seek to impeach it by showing that the defendant had in fact received money from collateral source payments.

incurred as a result of the defendant's conduct had fallen completely upon them and had turned their lives "upside down," and because evidence that they had received collateral source payments strongly tends to impeach that testimony, I would hold that the Court of Appeals correctly held that Ballard should have been allowed to offer evidence of the insurance payments received by the Warrens.[8]

(b) Turning now to *Luke*, even assuming that Mr. Luke's testimony was relevant to a material issue in the case and that it tended to be impeached by evidence of collateral source benefits, I conclude that the probative value of the collateral source evidence was outweighed by its prejudicial impact. Mr. Luke testified that he was concerned with having a well baby stay in the hospital because he did not know if he could afford it. He also added that he did not worry about the bill for the baby's hospital stay until he received it. Mr. Luke's concern regarding whether he could afford to have a well baby stay in the hospital is not necessarily consistent or inconsistent with the existence of insurance. In addition, Mr. Luke did not emphasize any financial hardship. In this regard, although Mr. Luke did testify that he was concerned about the child staying in the hospital, he did not testify, as did the Warrens, that he had had to pay the bill or that the actual payment of the bill had caused him anxiety. Further, as Luke was seeking damages for a well baby's stay in a hospital, it was reasonable for him to explain the circumstances under which the child came to remain there so as to dispel any possible doubt in a juror's mind as to whether he should recover from the defendant for medical expenses regarding a well child. Considering these factors, I conclude that Suber's need to offer evidence that the Lukes received insurance payments was minimal and was outweighed by the prejudice such evidence would create. I would thus affirm the Court of Appeals' holding in this case.

3. In sum, I dissent to the reversal in Case No. S95G1171, and concur specially in the affirmance in Case No. S95G1212.

I am authorized to state that Presiding Justice Fletcher joins in this special concurrence in part and dissent in part.

DECIDED MARCH 15, 1996.

*Weiner, Yancey, Dempsey & Diggs, Beryl H. Weiner, Thomas C. Dempsey,* for appellant (case no. S95G1171).

*Newton, Smith, Durden, Kaufold & Rice, Wilson R. Smith, Sutton & Associates, Berrien L. Sutton, Hallman & Stewart, Ronald W.*

---

[8] Other courts have reached the same conclusion when a plaintiff testifies that the injuries that he has suffered have led to penurious circumstances. See the cases cited in n. 6, supra.

*Hallman, Baker, Kinsman & Hollis, N. Mark Kinsman, Kelly J. Peters,* for appellees.

Certiorari to the Court of Appeals of Georgia — 217 Ga. App. 84.

*Newton, Smith, Durden, Kaufold & Rice, Wilson R. Smith,* for appellant (case no. S95G1212).

*Hallman & Stewart, Ronald W. Hallman, Weiner, Yancey, Dempsey & Diggs, Beryl H. Weiner, Weill & Weill, Harry W. Weill, N. Mark Kinsman, Kelly J. Peters,* for appellees.