944 So.2d 1174 (2006)
Robert Carter CONNELL and Connell & Son, Inc., Appellants,
v.
Mary RIGGINS as Guardian of the Person and Property of Caleb Riggins, Appellee.
No. 1D05-4064.
District Court of Appeal of Florida, First District.
December 15, 2006.
*1176 Raymond L. Roebuck and Brena B. Huffman, of the Roebuck Law Office, Jacksonville, for Appellants.
Steven R. Browning, Norwood S. Wilner, and Gregory H. Maxwell, of Spohrer, Wilner, Maxwell & Matthews, P.A., Jacksonville, for Appellee.
BROWNING, C.J.
Robert Carter Connell, the defendant in the trial court, appeals from a final judgment entered in favor of the plaintiff, Caleb Riggins, in the third trial arising from a vehicular accident involving Mr. Connell and Mr. Riggins. Mr. Connell contends that the trial court reversibly erred by, inter alia, applying Florida comparative negligence law to the issue of liability and damages in this case; using information in the hearsay State of Georgia Department of Public Safety driver's manual, in effect, to instruct the jury that Mr. Connell was negligent per se; and allowing surprise testimony by Mr. Riggins' motor vehicle accident reconstruction expert (Thomas Feiereisen) and argument based on this expert's prejudicial testimony. Concluding that these three rulings constitute reversible error, we are constrained to reverse the final judgment and remand for a new trial.
The accident in question occurred on November 20, 1998, around 3:40 p.m. when a four-ton Ford 350 pickup truck driven by Mr. Connell struck the compact-size Plymouth Horizon hatchback automobile driven by Mr. Riggins at a busy intersection in St. Marys, Georgia. The collision left Mr. Riggins severely injured, and he sued Mr. Connell and Mr. Connell's employer, Connell & Sons, Inc. (which owned the pickup truck and is no longer in operation), in the Duval County Circuit Court.

Choice of Law
A key issue in the trial court was whether to apply Florida comparative negligence law rather than Georgia law to the issue of negligence and damages. This choice-of-law matter is a legal question subject to our de novo review. See Collins Moving & Storage Corp. of S.C. v. Kirkell, 867 So.2d 1179, 1181 (Fla. 4th DCA 2004); Henry v. Windjammer Barefoot Cruises, 851 So.2d 731, 734 (Fla. 3d DCA 2003), receded from on other grounds, Tananta v. Cruise Ships Catering & Servs. Int'l, N.V., 909 So.2d 874, 882 (Fla. 3d DCA 2004) (en banc). Florida courts apply the "significant relationship" test to decide which state's laws apply to various elements of trials. See Bishop v. Fla. Specialty Paint Co., 389 So.2d 999 (Fla.1980). As a general principle:
The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in s. 6.
*1177 Id. at 1001 (quoting Restatement (Second) of Conflict of Laws, § 145(1) (1971)). Section 6 of this Restatement (Second) sets out the following factors as material considerations in choice-of-law decisions in all areas of the law:
(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.
Bishop, 389 So.2d at 1001 n. 1 (quoting Restatement (Second) of Conflict of Laws, § 6 (1971)).
In Bishop, the Supreme Court of Florida rejected the strict application of the long-held, inflexible lex loci delicti rule, adopted the Restatement (Second) of Conflict of Laws (1971) test from sections 145-146, and held that in a conflict-of-laws situation, consideration should be given to four main factors: 1) "the place where the injury occurred," 2) "the place where the conduct causing the injury occurred," 3) "the domicil, residence, nationality, place of incorporation and place of business of the parties," and 4) "the place where the relationship, if any, between the parties is centered." See id. at 1001. The Bishop court noted that the analysis set forth in the Restatement (Second) does not abandon the "place of injury" rule completely. In fact, the supreme court quoted section 146 of the Restatement (Second) of Conflict of Laws (1971), which expressly addresses "personal injuries" and states:
In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.
The Bishop court noted that, under most circumstances, the state where the injury occurred will be "the decisive consideration in determining the applicable choice of law." See 389 So.2d at 1001; State Farm Mut. Auto. Ins. Co. v. Olsen, 406 So.2d 1109, 1111 (Fla.1981) (holding that Illinois law controlled under the "significant relationship" test in a personal injury lawsuit, where Illinois was the site of an automobile accident involving an uninsured Illinois motorist and a fatally injured Florida resident who was insured under a Florida policy of automobile liability insurance, and Illinois had a paramount interest in the rights of its citizens who were subject to subrogation by an insurer on any uninsured motorist coverage it paid).
Determining which state's negligence law applies is pivotal to the outcome of this case. Under Florida's "pure" comparative negligence scheme, liability is apportioned according to each party's percentage of negligence. See Hoffman v. Jones, 280 So.2d 431 (Fla.1973) (abolishing doctrine of contributory negligence). In contrast, Georgia's "modified" comparative negligence law protects a defendant from judgment altogether if the defendant's negligence is equal to, or less than, the plaintiff's negligence. See DeVooght v. Hobbs, 265 Ga.App. 329, 593 S.E.2d 868, 873 (2004); Whelan v. Moone, 242 Ga.App. 795, 531 S.E.2d 727, 730 (2000) (finding no *1178 error in trial court's instructing jury that if it found plaintiff's negligence was less than defendant's, then plaintiff would not be precluded from recovery of damages, but jury would be required to reduce amount of damages otherwise awarded to plaintiff in proportion to plaintiff's negligence compared to defendant's negligence).
In the third and most recent trial, Mr. Connell filed a motion to apply Georgia law to all issues of negligence and damages. Mr. Riggins argued that while Georgia law should be applied to issues relating to the parties' conduct, Florida law should be applied to the issues of comparative negligence and the apportionment of damages. The parties agree that Bishop sets forth the appropriate analysis for resolving the choice-of-law question. It is undisputed that the only two states involved in this litigation are Georgia and Florida. Sections 145 and 146 of the Restatement (Second) of Conflict of Laws (1971) provide that the "significant relationship" question must be determined with respect to "the particular issue under consideration"; this "does not require the court to evaluate the recited contacts with a view to determine which state's local law should be applied to all issues in the case as a whole." See Stallworth v. Hospitality Rentals, Inc., 515 So.2d 413, 415 (Fla. 1st DCA 1987) (emphases in original).
In resolving the significant relationship question, we, like the Bishop court, look to section 145(2)(a)-(d) of the Restatement (Second) of Conflict of Laws (1971), which sets out Factors (a) through (d) in determining the types of "[c]ontacts to be taken into account." As to the first two factors, "the conduct causing the injury" occurred in Georgia, which is also "the place where the injury occurred." The third factor deals with residency, the place of incorporation, and the place of business. Mr. Riggins and his family are Georgia residents. Mr. Connell, a Florida resident, was an employee of a now-defunct Jacksonville, Florida-based company but was driving in Georgia at the time of the accident as a result of his ongoing commute from Florida to a work project on a naval base in Georgia. The fourth factor is "the place where the relationship, if any, between the parties is centered." The record disclosed no prior contact or relationship between the parties up to and until their motor vehicles collided in Georgia, injuring Mr. Riggins. Mr. Riggins filed this lawsuit in the Florida trial court.
"In an action for a personal injury, the local law of the state where the injury occurred," i.e., Georgia, "determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state"Florida is the only other state with any relationship to this case  "has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied." Restatement (Second) of Conflict of Laws § 146 (1971); Murphy v. Thornton, 746 So.2d 575, 575-76 (Fla. 1st DCA 1999). Therefore, in this negligence litigation, as Georgia was the site of the accident, its local law determines the parties' rights and liabilities respecting the issues of negligence and damages unless Florida has a more significant relationship to this case upon a proper consideration of the relevant factors set forth in section 6 of the Restatement (Second) of Conflict of Laws (1971).
In its written order concluding that Florida has the more significant relationship to this case with respect to the apportionment of damages, the trial court acknowledged Factors (a) through (g), supra, from section 6 of the Restatement (Second) of Conflict of Laws (1971) but did not find Factors (a) ("the needs of the interstate *1179 and international systems") or (e) ("the basic policies underlying the particular field of law") to be especially pertinent. As to Factor (b), "the relevant policies of the forum," the court cited statutory law from the chapter on "Negligence" expressing Florida's policy of loss allocation:
(2) EFFECT OF CONTRIBUTORY FAULT.In an action to which this section applies, any contributory fault chargeable to the claimant diminishes proportionately the amount awarded as economic and noneconomic damages for an injury attributable to the claimant's contributory fault, but does not bar recovery.
§ 768.81(2), Fla. Stat. (2001); see Y.H. Inv., Inc. v. Godales, 690 So.2d 1273, 1277 (Fla.1997) (construing section 768.81, Florida Statutes, as "a legislative policy choice to apportion liability for damages based upon a party's fault in causing the damage"). Addressing Factor (c), "the relative policies of other interested states" and the other states' "relative interest . . . in the determination of the particular issue," the trial court noted that Georgia's courts have indicated that state's public policy is established by the Georgia Legislature, not by the courts. See Borden v. Johnson, 196 Ga.App. 288, 395 S.E.2d 628, 629 (1990). In Georgia, the "equal to or greater than" bar to plaintiffs has been codified in the following statute:
If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover. In other cases the defendant is not relieved, although the plaintiff may in some way have contributed to the injury sustained.
Ga.Code. Ann. § 51-11-7; see Whelan, 531 S.E.2d at 730; Underwood v. Atlanta & W. Point R.R. Co., 105 Ga.App. 340, 124 S.E.2d 758, 772-73 (construing identical language in predecessor statute), aff'd in part and reversed in part, 218 Ga. 193, 126 S.E.2d 785 (1962). The first sentence in this statute embodies Georgia's contributory negligence rule, whereas the second sentence sets forth the comparative negligence rule. See id. This provision has been construed by the Georgia courts to require that a plaintiff prove that he or she was less negligent than the defendant in order to recover. See id.; accord Neiswonger v. Janics, 196 Ga.App. 607, 396 S.E.2d 553, 555 (1990) (noting that a plaintiff is denied recovery under Georgia law only where plaintiff's negligence is equal to, or greater than, defendant's negligence); Maulding v. Atlanta Transit Sys., Inc., 101 Ga.App. 11, 112 S.E.2d 666, 668 (1960). Balancing Florida's and Georgia's respective interests on the issue of fault and damages, the trial court concluded that Florida "has a strong public policy of requiring defendants to respond in damages according to their percentage of fault." The court determined that Georgia "either has the same policy or it has no policy at all on the issue." The Georgia Court of Appeals' decision in Whelan, 531 S.E.2d at 730, indicates that the "equal to or greater than" bar is Georgia's "judicially engrafted component of the comparative negligence rule," a modified comparative negligence rule that protects a plaintiff who is at fault, but less so than the defendant, thereby mitigating the harsh effects of the pure contributory negligence doctrine. See Godales, 690 So.2d at 1275. The trial court concluded that the application of Florida's pure comparative negligence rule would not adversely affect the Georgia resident, Mr. Riggins, in the instant case. The court determined that Florida has the greater interest in having a Florida jury resolve comparative negligence issues in a case pending in Florida, where a Florida defendant may be liable. See Wal-Mart Stores, Inc. v. Budget *1180 Rent-A-Car Sys., 567 So.2d 918 (Fla. 1st DCA 1990). The court concluded that "Florida's interest clearly outweighs that of Geo[r]gia in applying its rules to this case."
As to Factor (d), the court noted that Mr. Connell had shown no justifiable expectations that he actually had, or could have been expected to have, regarding the apportionment of damages. Rather, the court found that Mr. Connell's "justified expectations are the same as any other Florida defendant in a negligence action being tried in Florida."
Applying Factors (f) and (g),"certainty, predictability, and uniformity of result" and "ease in the determination and application of the law to be applied," respectively, the trial court remarked that Georgia's own courts have acknowledged that their decisions involving the rules for loss allocation "have been somewhat confusing." Underwood, 124 S.E.2d at 773; see Willis v. Jones, 89 Ga.App. 824, 81 S.E.2d 517, 518 (1954) (noting that decisions on question of plaintiff's and defendant's negligence, and effects thereof, have been "confusing and conflicting"). The trial court stated that "under Georgia's rules of decisions where there is a conflict in an older case and a later case, the older case takes precedence." To support this dubious proposition, the court cited Smith v. Maynard, 214 Ga. 764, 107 S.E.2d 815, 818 (1959), which, from our reading, simply does not so hold. Concluding that this historic confusion or conflict in Georgia's case law interpreting the law of negligence and damages placed the trial court "in the untenable position of having to cho[o]se between two diametrically opposed yet arguably correct interpretations of Georgia law," the court opted for Florida law in an effort to find clarity in the expression of the rule.
Georgia is where Mr. Riggins' injuries occurred, where the conduct causing the injury occurred, where Mr. Riggins resides, and where Mr. Connell was working pursuant to contract work at the time of the collision. The Florida Supreme Court's reasoning in Bishop and Olsen begins with the assumption that the law of Georgia (the site of the collision and injuries) should be applied. See Bishop, 389 So.2d at 1001 (noting that conflicts theory set out in Restatement (Second) of Conflict of Laws does not completely reject "place of injury" rule, and "[t]he state where the injury occurred would, under most circumstances, be the decisive consideration in determining the applicable choice of law"); Olsen, 406 So.2d at 1111. The only Florida connections relate to Mr. Connell's home residence, the place of business of Connell & Son, Inc., and the location of the circuit court where the lawsuit was filed. As a matter of law, Florida does not have a more significant relationship than Georgia to the occurrence and to the parties. See Barker v. Anderson, 546 So.2d 449, 450 (Fla. 1st DCA 1989) (affirming Florida trial court's determination that Georgia law applied to issues of negligence and joint and several liability in action arising out of automobile accident, even though plaintiff and defendant were Florida residents, where accident occurred in Georgia, third-party defendant had contacts with Georgia, and defendant alleged that intersection where collision occurred was unreasonably hazardous). Having carefully considered the myriad factors and underlying policies in the Restatement (Second) of Conflict of Laws (1971), sections 6, 145, and 146, we conclude that the trial court reversibly erred by applying Florida law to the issues of negligence and damages in this case.

Jury Instruction Relying on Hearsay Driver's Manual
Shortly before the collision with Mr. Riggins' automobile, Mr. Connell, who *1181 had the right-of-way, was approaching the intersection with a flashing yellow caution signal ahead. Mr. Riggins was on the crossroad, which had a flashing red traffic signal. Over a hearsay objection, the trial court read to the jury Plaintiff's Proposed Jury Instruction 9, as follows:
I further charge you that Caleb Riggins had no duty to yield the right-of-way if you find that Caleb Riggins, after stopping and looking, did not see Mr. Connell's truck as Caleb Riggins entered the roadway. Every person driving in Georgia is under a duty to know and obey the rules established by the Georgia Department of Public Safety. These rules provide that a driver approaching a flashing yellow caution light must slow down and exercise caution before proceeding through the intersection.
In closing argument, defense counsel had cited certain traffic safety statutes and had argued to the jury that "the Georgia Legislature makes traffic laws" and "is the lone entity in the state that can make a law as to what drivers should do." Defense counsel urged the jury to distinguish between the definitive statutes (requiring individuals to proceed through flashing yellow lights with caution) and any rule in a driver's manual published by "some safety board" that might require additionally that drivers slow down when approaching a flashing yellow caution light.
A trial court's ruling on a jury instruction is reviewed for an abuse of discretion. See Berman Bros., Inc. v. Hart, 915 So.2d 689, 690 (Fla. 1st DCA 2005); Howell v. Winkle, 866 So.2d 192, 197 (Fla. 1st DCA 2004). Mr. Connell contends that the trial court abused its discretion by giving the jury instruction based on the rule in the Georgia Department of Public Safety's hearsay driver's manual. Mr. Connell notes that in our opinion issued in the appeal after the first trial, we expressly agreed with Mr. Connell's position that the driver's manual should not have been admitted into evidence for the purpose given in the instruction. See Connell v. Riggins, 820 So.2d 1076 (Fla. 1st DCA 2002); Sikes v. Seaboard Coast Line R.R. Co., 429 So.2d 1216, 1220-21 (Fla. 1st DCA 1983) (characterizing the written Florida Driver's Handbook, a public document, as "a classic example of hearsay" that was erroneously admitted into evidence under the "public records and reports" exception). Mr. Riggins correctly notes in response that during the third trial, no attempt was made to introduce the driver's manual itself into evidence. Although this is true, Mr. Connell counters that the challenged instruction, which is based on information from the inadmissible driver's manual, misinformed and misled the jury regarding the applicable standard of care, rising to the level of prejudicial error.
Under Georgia statutory law expressly addressing a flashing yellow caution signal, "[w]hen a yellow lens is illuminated with rapid intermittent flashes, drivers of vehicles may proceed through the intersection or past such signal only with caution." Ga.Code Ann. § 40-6-23(2). Although "with caution" is not defined in the statute, it "must entail, at a minimum, keeping a proper lookout for other vehicles approaching the intersection." Lewis v. Ready, 247 Ga.App. 747, 544 S.E.2d 502, 504 n. 8 (2001). Whereas the statutory standard of care allows a driver such as Mr. Connell to proceed "with caution" through the intersection with a flashing yellow traffic signal, the instruction read to the jury and taken from the driver's manual rule effectively indicated that a driver in Mr. Connell's position "must slow down and exercise caution" before passing through the intersection. This instruction improperly allowed the jury to find that Mr. Connell was required under Georgia *1182 law to slow down. This instruction permitted the jury to conclude that, even if Mr. Connell otherwise exercised caution before proceeding through the intersection where he collided with Mr. Riggins' car, Mr. Connell failed to meet the standard of care if he did not slow down as he approached the flashing signal. The posted limit on the section of four-lane road on which Mr. Connell was driving immediately before the accident was 55 m.p.h. The jury heard some evidence indicating that Mr. Connell was driving at approximately the posted speed as he approached the intersection; and that he did not slow down until just moments before the crash, when he suddenly observed Mr. Riggins' automobile and slammed on his truck brakes, leaving a 58-foot pre-impact skid mark. Because the instruction given misinformed the jury on the applicable standard of care and prejudiced the defense, the trial court abused its discretion.
Accordingly, we REVERSE the final judgment and REMAND for a new trial.
WOLF and WEBSTER, JJ., concur.