VASSELOS, Respondent, v. GREEK ORTHODOX COMMUNITY
OF ST. SPYRIDON, Appellant.*

*June 1—June 30, 1964.*

* Motion for rehearing denied, with costs, on September 2, 1964.

For the appellant there was a brief by *Walter & Hopp* of Sheboygan, attorneys, and *Walstead, Anderson, Bylsma & Eisenberg* and *William Gorham Rice* of counsel, all of Madison, and oral argument by *Mr. Alexander Hopp* and *Mr. Rice*.

For the respondent there was a brief and oral argument by *Virgil W. Kalchthaler* of Sheboygan.

HALLOWS, J.  The difficulty in this case stems from the use of the general verdict because the court cannot determine what theory of the plaintiff's case was accepted by the jury. However, under the rule we constantly cite, if there is any credible evidence, either facts or inferences which may be reasonably drawn from them, which under any reasonable view supports the verdict of the jury it ought not be disturbed. The trial court believed the award of $1 to the plaintiff was not supported by the evidence. We disagree.

The theories of recovery and of the denials exceed the scope of the pleadings and the testimony is in dispute. Plain-

tiff was a member of the defendant's congregation which was confronted in 1956 with the problem of obtaining a new priest upon the retirement of its pastor. Plaintiff and several members of the board of trustees went to Chicago to discuss with the bishop of the Greek Orthodox Church the appointment of a young priest to fill the vacancy. At that meeting the plaintiff told the bishop that in addition to paying some $3,000 to $4,000 to the church's building fund, he would also pay $100 per month for five years to supplement the salary of a young priest so that he would receive $350 per month. No question is raised in this case concerning the $3,000 paid to the building fund.

According to the plaintiff's version he was to pay the defendant $100 per month for five years to supplement a young priest's salary on the condition the priest taught the children the Greek language and on the condition such sum would be needed. The plaintiff relies on a letter he wrote to the bishop in June of 1956 shortly after the conference in which he stated, "I will also give toward the salary of the priest $100 monthly for 5 years if it is necessary, to procure and have as our priest an efficient and capable youg [sic] leader of our church and Greek Community. . . . so that we will be enabled to have the best priest and teacher so that our children will be imbued with the Greek language and religion."

There is dispute in the testimony as to when the plaintiff and the trustees of the church had a conference regarding the commitment of the plaintiff. Plaintiff argues the meeting took place before the new priest took office, which was approximately January 1, 1957. The defendant claims it was about a year later. The plaintiff testified he made it clear at such conference the $100 per month was contingent upon the priest's teaching the children Greek and also was dependent upon the need of such financial assistance by the

church. The testimony on behalf of the defendant was to the effect the teaching of Greek was not a condition of the payment and the financial necessity, if a condition at all, was to be determined by the usual methods of bookkeeping employed by the church which accumulated losses from year to year. There was also evidence which would indicate the plaintiff waived the conditions and they were imposed long after the promise or offer was made in the presence of the bishop.

The plaintiff argues he made a conditional-pledge agreement in the nature of an indemnity contract or he made a conditional gift. In either event the breaches consisted of the priest's failure to continue to teach the Greek language, that the church did not need the $100 per month because there was no operating deficit and such yearly losses shown by the books were caused in part by capital expenditures which should have been charged to the building fund. The plaintiff also contends to accumulate yearly losses was error and each year was to be treated separately. The evidence is in dispute whether the building fund was solely for the purpose of providing a residence for the priest or whether it also included remodeling and repairing of the church.

The new priest taught Greek to the children for about one and one-half years and then announced he was no longer going to teach it. After about a year the teaching of the Greek language was resumed with a lay teacher. The plaintiff paid $1,200 for four years, generally after the close of the year and when asked for the contribution by a member of the board of trustees. In November of 1961 the plaintiff informed the church he would make no more payments because the conditions of his commitment had not been complied with. He testified he did not want to disrupt the campaign of the church for pledges by stopping his payment sooner and upon the announcement of the priest that the

Greek language would no longer be taught. He also testified when he was asked for the $1,200 each year it was paid upon assumption it was due because it was requested.

The trial court held there was credible evidence to sustain either the plaintiff's or the defendant's version of the facts. However, in its memorandum decision the trial court stated there was no credible evidence to justify the finding of $1 damages on either a contract or conditional-gift theory of recovery. The court found $426.40 to be the least amount a jury could find on the evidence. Incidentally, if this were a proper case for an additur, the rule of *Powers v. Allstate Ins. Co.* (1960), 10 Wis. (2d) 78, 102 N. W. (2d) 393, should have been applied and the reasonable amount determined by the court and a new trial granted unless the defendant accepted judgment for such amount. The proper manner of granting the new trial and the option is explained in *Lucas v. State Farm Mut. Automobile Ins. Co.* (1962), 17 Wis. (2d) 568, 117 N. W. (2d) 660.

We do not consider it necessary to decide whether the plaintiff made a contract with the defendant or a conditional gift to the defendant, or the extent of the conditions. The general verdict was in favor of the plaintiff. The jury could have believed the plaintiff had proved a cause of action for damages on a contract theory and the only condition which was a part of the contract was the teaching of the Greek language. As to this condition broken, the plaintiff proved no personal damages and consequently the most he could recover would be nominal damages of $1.

We cannot agree with the trial court that because the jury found for the plaintiff it must have necessarily accepted the plaintiff's version of the conditions relating to the financial need, the scope of the building fund, and the method of ascertaining the deficit. The trial court's view of the inadequacy of the damages is based upon the theory that the jury must have accepted the totality of the plaintiff's version

of the conditions. However, if the jury found the letter to the bishop as being determinative of the plaintiff's commitment, it could have considered plaintiff promised $100 for five years in consideration of the appointment of a young priest and the only condition of the payment thereof was his teaching the children the Greek language and religion. This view is entirely reasonable and the verdict should stand. The defendant's motion for judgment on the verdict should have been granted.

*By the Court.*—The order appealed from is reversed, with directions to enter a judgment on the verdict in favor of the plaintiff.

* Motion for rehearing denied, with costs, on September 2, 1964.