HACK, Appellant, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and another, Respondents.

*October 31—November 28, 1967.*

For the appellant there was a brief and oral argument by *Charles Saggio* of Milwaukee.

For the respondents there was a brief by *Kivett & Kasdorf*, attorneys, and *John M. Swietlik* of counsel, all of Milwaukee, and oral argument by *Mr. Swietlik*.

HANLEY, J. The following issues are presented on this appeal: (1) Is there sufficient evidence to support a finding of causal negligence as against the plaintiff; (2) is there any evidence to support a finding of future pain and suffering; (3) is the award for past pain, suffering,

and disability inadequate; (4) was reversible error committed by the trial court in the receipt of evidence of testimony during the course of the trial; and (5) was judgment properly entered?

*Finding of Causal Negligence with Respect to Lookout.*

Plaintiff challenges the sufficiency of the evidence to sustain the finding.

The plaintiff testified that when his automobile was 15 feet south of the south crosswalk he could see 30 to 50 feet west on Juneau avenue and that when his car cleared the snowbank on the southwest corner he could see 50 to 70 feet west. When one half of his car was in the intersection, he saw the Swenson vehicle for the first time. His estimate of the time that elapsed from his first sighting of the Swenson vehicle until impact occurred was the "blink of an eye."

On cross-examination Mr. Hack admitted that he signed a statement, part of which read: "I was in the intersection before I saw that other car." Also, on cross-examination he testified that he did not see the Swenson automobile until he was in the intersection.

The above testimony together with the absence of testimony that plaintiff braked his automobile or in any way tried to avoid impact is sufficient credible evidence for the jury to conclude that the plaintiff was causally negligent as to lookout. The jury could have disregarded plaintiff's testimony that he looked to his left on two occasions and saw nothing or it could have reasoned that he should have seen the defendant's automobile on at least one of those occasions. The trial court made the following comment with reference to the plaintiff's testimony:

". . . The Court is satisfied that there were inconsistencies in the plaintiff's testimony as to his lookout. Furthermore the jury could well have concluded that the

answers of the plaintiff were calculated to relieve the plaintiff of fault rather than an honest revelation of what occurred concerning his lookout. A jury is not bound by uncontradicted testimony of an interested witness or party. There was ample reason from the demeanor of the plaintiff and from his answers for the jury to disbelieve the plaintiff. Quite frankly the jury could properly have concluded there was an over-reaching on the part of the plaintiff in his testimony."

The plaintiff contends that the statement which plaintiff made to an investigator admitting he was in the intersection before he saw the other car "provides no evidence." The statement is admissible into evidence as an admission against interest. *Musha v. United States Fidelity & Guaranty Co.* (1960), 10 Wis. 2d 176, 102 N. W. 2d 243. The plaintiff's testimony that he did not understand what was being said in the statement goes to the weight to be accorded the statement, not to its admissibility.

### Evidence as to Future Pain and Suffering.

Plaintiff contends that the court was in error in changing the jury's answer with respect to future pain and suffering to zero. In its memorandum opinion on motions after verdict the trial court noted that the defendant objected to the inclusion of that question in the verdict and that the court took the matter under advisement, the purpose of which was to give the jury an opportunity to make a determination and for the court to review the law and the evidence so that it could make the determination whether there was sufficient credible evidence to submit the question to the jury. The trial court changed the answer to zero because it deemed the injuries were of the type that required the application of the *Diemel* [1] rule and that the only medical testimony as to the duration of any future pain and suffering was to

---

[1] *Diemel v. Weirich* (1953), 264 Wis. 265, 58 N. W. 2d 651.

the effect that the doctor could not give any definite time as to when the pain would cease.

The plaintiff suffered a cerebral concussion characterized by nausea, vomiting, vertigo, and headaches; he suffered headaches occasionally about the time of the trial. He also suffered injury to the muscles of his neck, resulting in muscle spasm and nerve damage to nerves leading to his arms, the brachial plexus. There was also testimony that the plaintiff's back was injured. He was first examined by Dr. Anthony J. Verdone, who found that he had pain over the sacroiliac articulations. The doctor found that the erector spinae muscle which runs from the neck all the way down to the sacrum or sacroiliac articulation was in acute spasm, which led him to believe that muscle had been torn. The original treatment prescribed was the so-called "conservative treatment," amounting to heat treatments, physiotherapy, diathermy, baths, medication, rest, ultrasonic and short wave treatments. The plaintiff did not respond to the conservative treatment; and so Dr. Verdone called in Drs. Ullrich and Berglund. A myelogram was performed; and the plaintiff was found to have a herniated nucleus pulposus, or, in ordinary terms, a slipped disc. Surgery was performed by Drs. Ullrich and Verdone to alleviate the condition.

Although there is some evidence to the effect that not all the injuries of which the plaintiff complains were caused by the accident in question, this is not relevant to the present question. The trial court was correct in changing the jury's answer to the question of future pain and suffering. The injuries, we believe, were not of the kind that a jury of laymen could know whether there would be future pain and suffering; therefore, there is applicable the rule that where the injuries cannot be objectively determined or where they are of such nature that a layman cannot with reasonable certainty know whether or not there will be future pain and suffering, competent

expert opinion testimony bearing upon the permanency of such injury or the likelihood that the injured person will endure future pain and suffering before allowing recovery therefor must be introduced. *Rivera v. Wollin* (1966), 30 Wis. 2d 305, 140 N. W. 2d 748; *Diemel v. Weirich, supra.* Only a medical expert is qualified to express an opinion to a medical certainty, or based on medical probabilities, as to whether the pain will continue in the future, and, if so, for how long a period it will so continue. In the absence of such expert testimony the jury should be instructed that no damages may be allowed for future pain and suffering. *Diemel v. Weirich, supra.*

The plaintiff called two expert medical witnesses. One, Dr. Ullrich, was not asked about the duration of any pain the plaintiff might be suffering; the other, Dr. Verdone, testified that the plaintiff still complains of leg pains but was unable to estimate when they would cease. He also testified that the pain in his neck muscle and brachial nerve would continue "for a long, long time." The doctor also testified that the plaintiff will have "occasional sporadic headaches for some time." The foregoing is the extent of the expert medical testimony on the question of the duration of future pain and suffering. We are of the opinion that this is insufficient as to duration under the *Diemel* rule and that the trial court's action was correct. Plaintiff seems to think that because there is proof of permanent disability, there is also proof of future pain and suffering.

### Claims of Inadequate Damages.

The jury awarded the plaintiff $375 for past pain and suffering. The trial court raised the award to $2,500. The plaintiff, contending that the award is still too small, must show an abuse of discretion on the part of the trial court in fixing the amount as it did before this court can reverse. *Parchia v. Parchia* (1964), 24 Wis. 2d 659, 130 N. W. 2d 205.

The trial commenced on November 22, 1966. On direct examination the plaintiff testified that the accident prevented him from working for two and one-half weeks immediately thereafter and that he subsequently lost no time until December 31, 1962, when he experienced crippling pains on the job. He also testified that he had never been entirely free of pain since the accident. He missed about three and one-half weeks of work upon feeling the pain on December 31, 1962; and he missed work frequently thereafter until he was operated on on July 9, 1963. After the operation he did not work again until November, 1963. On cross-examination it was brought out that between July, 1963, and November, 1963, the plaintiff visited Bavaria. After he returned to work in November, 1963, he resumed the same job as he held before the accident in question. He was since promoted to another job, but that had nothing to do with his injuries. He has since done some rototilling in his backyard. There is expert medical testimony by Dr. Ansfield, called by the defendants, that the crippling pains suffered by the plaintiff on December 31, 1962, were caused by the lifting which plaintiff was required to do on the job. There is also testimony that plaintiff was involved in another automobile accident on January 9, 1963. The jury and the trial court could have entertained legitimate doubts as to how much of the pain and suffering plaintiff testified to was caused by the accident in question. We do not think the $2,500 award was an abuse of discretion on the part of the trial court.

Plaintiff also complains that the award for past wage loss was inadequate. The plaintiff did not testify exactly as to his wage rate, nor did he testify exactly as to when he was not working. No records of employment were brought in. $2,000 was awarded. Plaintiff seeks an additional $961.40. We think the jury's award is supported by the evidence.

Plaintiff also seeks an award of $30,000 for permanent disability. The jury awarded $2,250. The jury was not

required to believe that the accident in question was the sole cause of plaintiff's disability and may have questioned the extent of his disability since he testified that when he returned to work after his operation, he performed the same tasks that he did before the accident. The jury may also have questioned the extent of the disability since plaintiff was proved to have done some rototilling in his backyard in the spring of 1966. We think the award made by the court is adequate.

### *Alleged Errors as to Admission of Evidence.*

Plaintiff also contends that evidence that his employer paid benefits for the two and one-half week period that plaintiff was absent from work and that he submitted a doctor bill from a Dr. Cohen to his own insurance company in 1963 should have been excluded because of the collateral source rule. But in both instances the evidence was introduced to impeach the plaintiff's credibility. Plaintiff had testified that he went back to work because he needed money for the support of his family. The defense then asked him whether there was a compensation program where he worked. With respect to the doctor bill, plaintiff testified that he was not involved in an automobile accident other than the one in question and testified Dr. Cohen treated him for injuries suffered in the accident in question. The defense asked whether or not the doctor bill was submitted to his own insurer because of another accident. Thus, we think that the evidence was admissible for purposes of impeachment.

Plaintiff also complains that statements made to an investigating officer at the scene of the accident were admitted into evidence. He claims that sec. 885.28, Stats., prevents this. But the statute has been held not to be applicable to police officers investigating an accident because they lack interest in the outcome of the case.

*Keplin v. Hardware Mut. Casualty Co.* (1964), 24 Wis. 2d 319, 129 N. W. 2d 321, 130 N. W. 2d 3.

Defendant asked a witness, Dr. Verdone, if he was ever convicted of a criminal offense. This is allowed pursuant to sec. 885.19, Stats. 1965. Dr. Verdone denied that he was ever convicted of a criminal offense. The deputy clerk of the district court of Milwaukee county produced the record of Anthony James Verdone which revealed that on November 19, 1962, Anthony James Verdone pleaded guilty to a charge of disorderly conduct and was convicted and ordered to pay a fine of $50 and costs, that four years later, on April 25, 1966, an order was made vacating the judgment and the case reopened and dismissed. Apparently counsel for the defense was not aware of the recent dismissal when the question was asked of the witness.

The appellant further assigns error to the fact that the trial court refused to instruct the jury relative to the fact that the matter was reopened and dismissed. The only request for such instruction came from counsel for the defendant, and no objection was made by counsel for the plaintiff that such an instruction was not given.

We do not believe that the failure to instruct was prejudicial error.

### Entry of Judgment.

Finally, the plaintiff attacks the manner in which judgment is entered. Defendant filed his notice of election and consent to judgment, after which judgment was entered. In *Lucas v. State Farm Mut. Automobile Ins. Co.* (1962), 17 Wis. 2d 568, 117 N. W. 2d 660, the court detailed the procedure to be followed after verdict when a remittitur is made. Analogous procedure is proper when an additur is made. *Vasselos v. Greek Orthodox Community* (1964), 24 Wis. 2d 376, 380, 129 N. W. 2d 243.

Thus, in this case the trial court formally set aside the verdict and granted defendant a new trial on the issue of damages for past pain, suffering and disability unless he consented to let judgment be entered against him for $2,500 for such past pain, suffering, and disability. The defendant thereupon filed his consent to let judgment be entered against him for the increased amount. Upon defendant's consent to judgment, it was proper to enter the judgment whereupon plaintiff can appeal. See *Lucas v. State Farm Mut. Automobile Ins. Co., supra,* at page 578.

*By the Court.*—Judgment affirmed.